## JOSEPH MEYERS *vs.* HORACE POPE.

In an action for the seduction of the plaintiff's wife, the plaintiff, to prove his marriage with the woman alleged to be his wife, testified that seven years ago he and she went before a justice of the peace for the county where they both lived, and in the town where the justice resided, with intent on the part of both to contract marriage before the justice; that he stated in the presence and hearing of the justice that the woman was his wife; and that afterwards he and she cohabited together as man and wife, and had children, he believing himself lawfully married to her, and she believing herself lawfully married to him. *Held,* that under the Gen. Sts. *c.* 106, §§ 20, 22, the jury would be warranted on this testimony in finding a marriage, although the justice testified that he did not understand that he married the plaintiff and the woman at that time, and that all that was said by either was that the plaintiff introduced the woman as his wife.

TORT for the seduction of the plaintiff's wife. At the trial in the Superior Court, before *Bacon*, J., the plaintiff, to prove his marriage with his alleged wife, testified " that about seven years ago, he, accompanied by his alleged wife, then named Ellen Duso, went before J. B. Hasler, Esquire, of Webster, in this county, supposed by them to be a justice of the peace for the county, with intent on the part of both to contract marriage before him, both the plaintiff and Ellen Duso then residing at Oxford, in this county ; that the plaintiff stated in Hasler's presence and hearing that said Ellen was his wife ; that thereafter they cohabited together as man and wife thence hitherto and had children, the plaintiff believing himself then and thereby lawfully married to said · Ellen, and said Ellen believing herself lawfully married to the plaintiff ; and that after the time of the alleged seduction, the parties were formally married to each other, said Ellen expressing doubts as to the validity of her former so called marriage."

Hasler testified " that he did not understand that he married the parties at that time, and that all that was said by either was that the plaintiff introduced the woman as his wife."

On this evidence the judge ruled that there was no evidence to warrant the jury in finding the fact of marriage between the plaintiff and said Ellen, and directed a verdict for the defendant, which was returned, and the plaintiff alleged exceptions.

*H. B. Staples & J. H. Stockwell*, for the plaintiff.

*F. A. Gaskill*, (*G. F. Verry* with him,) for the defendant.

Meyers *v.* Pope.

CHAPMAN, C. J.   This was an action of tort for the seduction of Ellen Meyers, alleged to be the plaintiff's wife.   The presiding judge ruled that there was no evidence to authorize the jury to find the fact of marriage between the plaintiff and said Ellen, and directed a verdict for the defendant.   It was formerly held, in actions of this kind, that a marriage in fact must be proved. *Morris* v. *Miller*, 4 Burr. 2057.   *Leader* v. *Barry*, 1 Esp. 353. But the rule has been changed in this Commonwealth.   The St. of 1840, *c.* 84, provided that " whenever, on a hearing of any application for divorce, the fact of marriage is required or offered to be proved, evidence of admission of said fact by the party against whom the process is instituted, or of general repute, or of cohabitation as married persons, or any other circumstantial or presumptive evidence, from which said fact may be inferred, shall be received as competent evidence for consideration, whether the marriage to be proved was contracted in this Commonwealth or elsewhere."   The St. of 1841, *c.* 20, extended these provisions " to all cases where it shall become necessary to prove the fact of marriage in any hearing before any court in this Commonwealth." These statutes included cases like the present, and are reënacted in the Gen. Sts. *c.* 106, § 22.

In this case, the jury would be authorized to find, upon the testimony of the plaintiff that he and Ellen Duso went before Hasler, a justice of the peace, believing him to be such ; that the plaintiff stated in Hasler's presence and hearing that Ellen was his wife, and that they did this with an intent on the part of both to contract marriage before him in good faith.   This was done at Wobster, the place of his residence, and was followed by cohabitation and the birth of children, under the belief that they were lawfully married.   But Hasler testified " that he did not understand that he married the parties at that time, and that all that was said by either was that the plaintiff introduced the woman as his wife."   This is the only evidence that raised a doubt about the fact of marriage.   If the jury should believe that the plaintiff's memory and statements were the more accurate, they might find upon this evidence that there was a marriage in conformity with our statutes ; for no form of words is necessary for the solemniza-

tion of a marriage. It is sufficient if the parties contract before a justice of the peace or minister, and he assents to the proceeding, acting in his official character. *Milford* v. *Worcester*, 7 Mass. 48, 54. In that case it was held to be necessary for the magistrate or minister to act officially in order to constitute a valid marriage under our statutes. But since the time of that decision the legislature has made further provisions to save marriages which parties have contracted in good faith, in the belief that they were in conformity with the statutes, and followed by cohabitation, from being regarded as illegal. A marriage may be valid, though the minister or magistrate is prohibited under a heavy penalty from celebrating it; and by the Rev. Sts. *c.* 75, § 24, and the Gen. Sts. *c.* 106, § 20, a marriage is not to be " deemed or adjudged void, nor shall the validity thereof be in any way affected, by want of jurisdiction or authority in such person, or by an omission or informality in the manner of entering the intention of marriage, if the marriage is in other respects lawful, and is consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage." This includes a marriage where the person celebrating it did not intend to act officially, and knows he could not do so.

The policy of the law, as thus expressed, is strongly opposed to regarding a marriage, entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, as void. A liberal construction of the statute authorizes us to construe it as including a case where the parties go before a magistrate or minister, make a marriage contract in some form in his presence, in the belief that he sanctions and assents to it in his official capacity, and cohabit as husband and wife afterwards, believing that they are legally married, though the magistrate understands the matter differently, and does not intend to act officially in the matter. The misunderstanding between the parties and the magistrate may be regarded as an informality not rendering the marriage void. The spirit of the statute would be violated by holding the parties to be fornicators and the children illegitimate.

We think, therefore, it is not necessary for the jury to find that the magistrate intended to act officially ; but if they find that the parties acted as stated above, the marriage should be regarded as valid. *Exceptions sustained.*