[Filed December 14, 1891.]

## IN RE ESTATE OF GEORGE R. MEGGINSON, DECEASED.

MARRIAGE—VALIDITY—PRESUMPTION.—Where two persons, competent to assume that relation, enter into a contract of marriage, which is solemnized in good faith before one professing to be empowered for that purpose, and this is followed by cohabitation between the parties as husband and wife, the law raises a presumption of a valid marriage, and that the celebrant was legally authorized to perform the ceremony. This presumption increases in strength with lapse of time, and can be overcome only by clear and positive proof of illegality in the transaction.

Benton county: M. L. PIPES, Judge.

Petitioners appeal.   Affirmed.

*John Kelsay*, and *John Burnett*, for Appellants.

To be a valid marriage in 1860, at the time the respondents claim the pretended marriage of George R. Megginson and Julia Megginson, it was necessary that the marriage should have been solemnized by a minister of the gospel. (Stat. 1854, 494; Stat. 1855, 536.)

One of two things to prevent the pretended marriage from being null and void must have existed at the time. First, if Newcomb was a minister of the gospel in the state of Oregon at the time of the marriage, in 1860, and as such solemnized the marriage; second, if he were not a minister of the gospel at that time, but professed to be such to said George R. Megginson and said Julia, and they believed he was a minister and as such solemnized the marriage. (*Holmes* v. *Holmes*, 1 Saw. 100; *Milford* v. *Worcester*, 7 Mass. 48; *Redgrave* v. *Redgrave*, 38 Md. 93; *Beverlin* v. *Beverlin*, 29 W. Va. 732.)

The legislature of Oregon, in adopting the statute of Massachusetts, adopted with it the judicial construction of that state as understood at the time. (*Trabant* v. *Rummel*, 14 Or. 17; *Gerrish* v. *Gerrish*, 8 Or. 351; 34 Am. Rep. 585; *Comw.* v. *Munson*, 127 Mass. 459.)

In all cases in which a party alleges that a marriage was celebrated at a particular place and time, he must prove

that it was so celebrated at that time and place, and he cannot prove cohabitation and repute to raise a presumption of a marriage at some other time and place. (14 Am. & Eng. Enc. Law, 529, 530; *Blackburn* v. *Crawfords*, 3 Wall. 175; *Barnum* v. *Barnum*, 42 Md. 251.)

In a suit to recover the interest of the widow and heirs of the deceased, the authority of the minister who solemnized the marriage cannot be proven by general reputation. (*Pettyjohn* v. *Pettyjohn*, 1 Hous. (Del.) 332.)

*J. R. Bryson*, and *W. S. McFadden*, for Respondents.

If the judge or minister who performed the ceremony were so, *de facto*, and the parties have acted in good faith, the marriage is good, though he were not minister or judge *de jure*. (Stewart Mar. & Div. § 98; 14 Am. & Eng. Enc. Law, 517; *State* v. *Robbins*, 6 Ired. L. 23; 44 Am. Dec. 64; *Londonderry* v. *Chester*, 2 N. H. 268; 9 Am. Dec. 61; 2 Whar. Ev. § 1297; *Chapman* v. *Herrold*, 58 Pa. St. 106.)

The celebrant need only take notice that the parties are before him to be married and pronounce them husband and wife. (Stew. Mar. & Div. § 99; *Pearson* v. *Howey*, 11 N. J. L. 12; *State* v. *Rood*, 12 Vt. 396.)

No celebration is necessary by the common law. (14 Am. & Eng. Enc. Law, 515; Stew. Mar. & Div. § 90.)

Where a marriage in fact is shown, the law raises a strong presumption in favor of its legality, and the burden of proof is on the party contesting its validity to show it was not valid. (*State ex rel. Setzer* v. *Setzer*, 97 N. C. 252; 2 Am. St. Rep. 290; Browne Divorce, 348.)

All the presumptions of law are in favor of marriage, and that the celebrant was duly qualified. (Am. & Eng. Enc. Law, 522; *State* v. *Abbey*, 29 Vt. 60; 67 Am. Dec. 754.)

If the celebration of marriage be proved, the contract, the capacity of the parties, in fact the validity of the marriage, is presumed. (*Fleming* v. *People*, 27 N. Y. 329.)

So, if the contract be proved, the capacity of the parties

is presumed.   (Stew. Mar. & Div. §§ 125, 126, 132; *Canjolle* v. *Terris*, 26 Barb. 177.)

In the interpretation of statutes on the subject of marriage, a common law marriage is good though not in conformity to the statutory requirements, unless the statutes contain express words of nullity.   (Stew. Mar. & Div. § 53; 1 Bish. Mar. & Div. ¿ 283; *Dyer* v. *Brannock*, 66 Mo. 391; 27 Am. Rep. 359; *State* v. *Gonce*, 79 Mo. 600; *Meister* v. *Moore*, 96 U. S. 76; *Campbell* v. *Gallatt*, 43 Ala. 57; *Carmichael* v. *State*, 12 Ohio St. 553; *Beverlin* v. *Beverlin*, 29 W. Va. 732.)

Statutes providing particular formalities, but not providing that if such formalities be not followed, the marriage shall be void, are held to be directory only.   (14 Am. & Eng. Enc. Law, 485; *Mathewson* v. *Phœnix Iron Foundry*, 20 Fed Rep. 281; 2 Greenl. Ev. ¿ 260; *Patterson* v. *Gaines*, 6 How. U. S. 550; *Port* v. *Port*, 70 Ill. 484; Stew. Mar. &. Div. ¿ 91.)

Evidence of consent and agreement to become husband and wife, and of their cohabiting together, has been held sufficient proof of marriage and legitimatizes the issue. (*Boone* v. *Parnell*, 28 Md. 607; 92 Am. Dec. 713; *Hynes* v. *McDermott*, 82 N. Y. 41; 37 Am. Dec. 538; *Betsinger* v. *Chapman*, 88 N. Y. 487.)

The fact that parties have publicly acknowledged each other as husband and wife, or have assumed marriage rights, duties, and obligations, or have been generally reputed in the place of their residence to be husband and wife, are relevant to prove a contract of marriage between them.   (*Kan. Pac. R. R. Co.* v. *Miller*, 2 Colo. 461; *Barnum* v. *Barnum*, 42 Md. 251; *Chamberlain* v. *Chamberlain*, 71 N. Y. 423; *Jones* v. *Riddick*, 79 N. C. 290; *Yardley's Estate*, 75 Pa. St. 207.)

No particular words are necessary in the contract of marriage.   (*Bowman* v. *Bowman*, 64 Ill. 74; Stew. Mar. & Div. ¿¿ 84, 86.)

When parties live together ostensibly as man and wife, conduct themselves toward each other as such, and are received into society and treated by their friends as being

entitled to that status, the law will presume that they have been legally married. (*Redgrave* v. *Redgrave*, 38 Md. 93; 14 Am. & Eng. Enc. Law, 528.)

If a marriage be shown to have taken place, then the law presumes it regular, until the contrary is proved. This presumption of law is not lightly to be repelled. It is not to be broken in upon or shaken by a mere balance of probability. (2 Whar. Ev. § 1297; 1 Whar. Ev. § 224; Stew. Mar. & Div. § 132; 2 Greenl. Ev. § 462; *Murray* v *. Murray*, 6 Or. 26.)

Evidence of the conduct of deceased relatives is evidence of peculiar weight in proof of marriage or births, and especially of the manner in which a person has been brought up and treated by his family. (1 Whar. Ev. §§ 211, 212; *Kelly* v. *McGuire*, 15 Ark. 555; Hill's Code, 552, § 706, sub. 3; *Johnson* v. *Johnson*, Admr. 30 Mo. 72; 77 Am. Dec. 598; Stew. Mar. & Div. § 123.)

Marriage may be proved by an eye-witness, and if followed by cohabitation its validity will be presumed. (*Lord* v. *State*, 17 Neb. 526; *Jacobsen* v. *Siddal*, 12 Or. 280; 53 Am. Rep. 360.)

The testimony of some one who witnessed a marriage is the strongest proof, and proof of cohabitation and reports are deemed sufficient proof of marriage. (*Vincent's Appeal*, 2 Brew. (Pa.) 239; *Tholey's Appeal*, 93 Pa. St. 36; *Cross* v. *Cross*, 55 Mich. 280; 1 Bish. Mar. & Div. §§ 510, 537, 805.)

Bean, J.—This is a controversy concerning the final distribution of the personal estate of George R. Megginson, deceased, arising between his collateral kindred and the respondents, who claim to be his wife and children. The sole question in this case is the validity of the marriage between the deceased and the respondent Julia at the Siletz Indian reservation in the spring of 1860.

The facts concerning this marriage are these: For some time prior to 1860, the deceased was employed by the government as farmer at the Siletz Indian agency, in Benton county, and, while so employed, became acquainted with

an Indian woman belonging to the reservation, known as Sixes Julia.   This acquaintance finally resulted in a formal ceremony of marriage of Megginson and Julia in the spring of 1860 before Daniel Newcomb, the agent of the United States in charge of the reservation, who assumed to act in the capacity of a minister in solemnizing the marriage. They continued to live together as husband and wife on the reservation until 1864, when Megginson was discharged by the then agent because he had an Indian woman for a wife.   They then moved to the Alsea agency and remained there until 1865, when they settled on a farm at Cape Foulweather, where they continued to reside until Megginson's death, in 1888.   During all this time, they demeaned themselves toward each other as husband and wife, lived and cohabited together, with a full belief that they were lawfully married, had children born to them, were recognized and treated by their neighbors, friends and acquaintances as husband and wife.   Julia was no longer recognized as a ward of the government or as belonging to the agency—in fact, no question as to the validity of the marriage seems to have been suggested or thought of until after Megginson's death.

It is now claimed that the marriage was invalid because Newcomb, before whom it was solemnized, was not in fact a minister of the gospel authorized to solemnize marriages, and did not profess to act in that capacity at the time. Upon this question, the evidence shows Newcomb to have been both before and during his service as Indian agent, a member of the Methodist church, and a devoutly religious and pious man, sometimes preaching to the Indians under his charge, as well as occupying the pulpit in other places. He was generally known in and around the agency as Preacher or Reverend Newcomb, and was so introduced to some of the witnesses by ministers of that church.   There is no evidence that he was ever formally authorized to preach, nor does his name appear upon the records of the conference of the church, which, however, do not antedate

April, 1860; but the evidence that he was not a regularly authorized minister is of a negative character, and is not inconsistent with his professions or known reputation as a preacher. The day before the marriage of Megginson and Julia, he went from the upper to the lower farm on the reservation for the purpose, as reported at the time, of solemnizing this marriage, and while there did solemnize the marriage, in the presence of witnesses, according to the forms of his church, and after invoking the divine blessing upon the union, pronounced them man and wife.

Upon this state of facts, we confidently assert that no well-considered case can be found in the books where the courts in a civil case have declared such a marriage void and bastardized the children, without clear, distinct and satisfactory proof that the person solemnizing the marriage was not authorized to do so. Indeed, such is the estimate in which the law regards the consequences flowing from the marriage relation, that it fortifies it with the presumption of validity, which can only be overcome by the most clear and cogent proof. All the presumptions are in favor of matrimony. "The law presumes morality and not immorality; marriage and not concubinage; legitimacy and not bastardy. Where there is enough to create a foundation for the presumption of marriage it can be repelled only by the most cogent and satisfactory evidence." (*Hynes* v. *McDermott*, 91 N. Y. 459; 43 Am. Rep. 677.)

Lord Lyndhurst, in *Morris* v. *Davis*, 5 Cl. & Fin. 163, speaking of this presumption, says: "The presumption of law is not lightly to be repelled. It is not to be broken in upon, or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory and conclusive." And Lord Campbell said, in *Piers* v. *Piers*, 2 H. L. Cas. 331, it could only be negatived "by disproving every reasonable possibility." Where a formal ceremony of marriage is shown between persons competent to enter into that relation, followed by cohabitation, the law raises the presumption of a valid

marriage, and that the celebrant was legally authorized to perform the same, and this presumption can only be overcome by clear and convincing evidence to the contrary. Marriage by a person assuming to act as a minister, and being *per verba de presenti*, the person performing the ceremony must be presumed to have been a clergyman. (*Patterson* v. *Gaines*, 6 How. U. S. 550; *Rex* v. *Brampton*, 10 East. 282; *Londonderry* v. *Chester*, 2 N. H. 268; 9 Am. Dec. 61; *State* v. *Abbey*, 29 Vt. 60; 67 Am. Dec. 754; *Meyers* v. *Pope*, 110 Mass. 314; *Redgrave* v. *Redgrave*, 38 Md. 93.)

The policy of the law is strongly opposed to regarding as void a marriage entered into in good faith, believed by one or both of the parties to be legal, followed by cohabitation, and where the legitimacy of children is called in question, both upon authority and general principles of public policy and natural equity, every reasonable presumption is indulged in favor of legitimacy. (*Johnson* v. *Johnson*, 30 Mo. 72; 77 Am. Dec. 598.) The burden of proof is on the party objecting to the validity of such a marriage throughout, against the constant pressure of this presumption, to show its illegality; and this he cannot do except by removing every reasonable presumption both of law and fact by clear and positive proof. Nor do any provisions of the statute in force at the time of the marriage in this case in any way affect the rule heretofore stated.

In *Hutchins* v. *Kimmell*, 31 Mich. 130; 18 Am. Rep. 164, Mr. Justice Cooley, in passing upon the legality of a marriage under a statute identical with the one above referred to, held that evidence that a ceremony was performed ostensibly in celebration of the marriage with the apparent consent and co-operation of the parties, is evidence of a valid marriage, even though it has fallen short of showing that the statutory regulations had been complied with, or had affirmatively shown that they were not. He says: "This has become the settled doctrine of the American courts, the few cases of dissent or apparent dissent being borne down by the great weight of authority in favor of the rule as we have stated it," citing a large

number of authorities with which it is unnecessary to encumber this opinion. It is also held in the same case that a marriage *per verba de presenti* without any form of ceremony, is valid and binding under the statute, but we do not deem it necessary to notice that question in this case.

The error into which counsel for appellants have fallen, lies in supposing that the burden of proof is on the respondents to show all the essential requisites of a valid marriage, and having failed to show that Newcomb was a regularly authorized minister, or that he openly avowed or declared to Megginson and Julia at the time of the marriage that he was such minister, their case fails. This is not the law. When respondents showed a formal ceremony of marriage, at the time and place alleged, between parties competent to contract marriage, before a person assuming to act in the capacity of a minister of the gospel, followed by cohabitation, under a belief that they were lawfully married, the law immediately attaches thereto all the presumptions necessary to make the marriage valid, and the burden is on the appellants to show its invalidity by clear, distinct, positive and satisfactory proof. Under the statute in force at the time, this could only be done by showing, not simply that Newcomb was not a minister authorized to solemnize marriages, but that he did not profess or pretend to be, at the time; or if he did so pretend, the circumstances were such that the parties did not and could not have reasonably believed that he possessed the authority he assumed; and this appellants have failed to do in every particular.

"When a marriage, therefore," says Mr. Bishop, "has once been shown, however celebrated, whether regularly or irregularly, or however proved, whether directly or by circumstantial evidence, the law raises a strong presumption in favor of its legality; so that the burden is with the party objecting throughout, and in every particular, to prove against the constant pressure of this presumption of law, that it is illegal and void. And it has been considered,

that the validity of a marriage cannot be tried like any other question of fact which is independent of presumption; because the law, besides casting the burden of proof upon the objecting party, will still presume in favor of the marriage, and this presumption increases in strength with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in its nature matrimonial, should be such in fact, the law, when administered by enlightened judges, seizes upon all presumptions both of law and of fact, and presses into its service all things which can help it in each particular case, to sustain marriage, and repel the conclusion of unlawful commerce." (1 Bishop on M. & D. § 457.)

The decree of the court below is therefore affirmed.