Argued March 16; affirmed April 4, 1933

## JOHNSON *v.* BAKER ET AL.

(20 P. (2d) 407)

*Frank S. Grant,* City Attorney of Portland (R. A. Imlay, Deputy City Attorney, of Portland, on the brief), for appellants.

*Harry G. Hoy,* of Portland (Hoy & Doxey and Arthur E. Prag, all of Portland, on the brief), for respondent.

BELT, J. This proceeding was instituted to review the decision of the board of trustees of policemen's relief and pension fund of the city of Portland, denying the application of the plaintiff for payment of pension under the provisions of the city charter (§§ 296 to 309 inclusive). John W. Johnson was, on the 14th day of January, 1911, appointed to a position on the police force of the city of Portland and continued in such service until the time of his death on February 6, 1932. On March 14, 1932, plaintiff, who claimed to be the widow of John W. Johnson, filed a written application with the board of trustees for payment of pension. Payment was denied for the reason that the alleged marriage to Johnson was not established. Thereupon, after hearing in the circuit court, a writ was issued reversing the decision of the board of trustees and the cause was remanded with direction to pay the claim of the plaintiff. From such judgment the defendants appeal.

The sole question is whether the evidence before the board of trustees warranted the legal conclusion that no valid marriage existed between the plaintiff and the deceased police officer. If plaintiff is the widow of Johnson, it is conceded that she is entitled under the charter "to receive a pension equal in amount to one-half the salary attached at the time of the death" of this police officer.

The record discloses uncontradicted evidence in substance as follows:

The plaintiff and John W. Johnson were married on the 19th day of September, 1929, on the high seas about 15 miles off the mouth of the Columbia river. Mrs. Hannah C. Steelman, mother of the plaintiff, and James D. Bobbroff acted as witnesses to this wed-

ding ceremony which was performed by H. C. Cassidy, captain of the gasoline boat "Crescent". This party of four drove in the automobile of Bobbroff from Portland, Oregon, to Astoria where they were met by Captain Cassidy, an old time friend of the bridegroom. Plaintiff testified that she had been at Taft, Oregon, during the summer and knew of several sea marriages and that "we decided that was the way we would get married". The wedding ceremony was performed in the usual manner. Plaintiff said she placed her hand on the Bible when she and Johnson were pronounced man and wife. The record contains the affidavits of Mrs. Steelman and Bobbroff who "stood up" as witnesses to the marriage. After the ceremony was performed and the greater part of the day was spent in fishing, the boat returned to Astoria and the bridal party left for Portland. Plaintiff and Johnson lived together continuously in Portland as man and wife until the day of his death. According to various affidavits, some of which were made by members of the police force, Johnson always held the plaintiff out to the world as his wife. A certain percentage of his monthly salary went into the fund in question. So far as the record shows, no question was ever raised concerning the legality of the marriage until after Johnson's lips were sealed in death.

Relative to the question of good faith, the plaintiff testified that she did not know whether Captain Cassidy was a "preacher or a priest of any kind" or that "he held any office that authorized him to perform the marriage ceremony" as his authority had never been questioned. She said: "There was never no doubt in my mind but what it was all right and I don't think there was in Mr. Johnson's mind, because last fall he came home one day and he said, 'The old

fellow that married us is dead'. I don't know whether he saw it in the paper or whether somebody told him or not. It was way last fall, months before he died". In one part of her testimony she stated that no marriage license was obtained but later she corrected such statement by saying, "For aught I know he may have obtained a license", and that she was "very sure that Mr. Johnson did whatever he thought was necessary to arrange and obtain for us a valid marriage".

■ We think it reasonable to infer from the evidence that this small boat "Crescent", having a crew of only three or four men, was owned by Captain Cassidy and that he resided in Oregon. Therefore, it follows that a marriage thus solemnized on the high seas is to be tested by the law of this state. It is a well established rule that a vessel upon the high seas is followed by the law of the nation or state in which its owner resides: *Fisher v. Fisher,* 250 N. Y. 313 (165 N. E. 460, 61 A. L. R. 1523); *Bolmer v. Edsall,* 90 N. J. Eq. 299 (106 Atl. 646). If the domicile of the parties to a marriage on the high seas is the deciding factor in determining the law applicable thereto, as apparently held in *Norman v. Norman,* 121 Cal. 620 (54 P. 143, 42 L. R. A. 343, 66 Am. St. Rep. 74), and in *Holmes v. Holmes,* Fed. Cas. No. 6638, the marriage in question would still be tested by the law of Oregon.

■ This is not a case where the parties went on the high seas for the avowed purpose of evading the marriage laws of the state of their domicile. In the instant case the parties were capable of contracting marriage and were laboring under no legal impediment. They were married in good faith and without doubt believed that Captain Cassidy was authorized to perform the wedding ceremony. Under this state of the record, it

is the duty of the court to invoke every presumption known to law to sustain this marriage. In our opinion the legal principles announced in the leading case of *Re Estate of Megginson,* 21 Or. 387 (28 P. 388, 14 L. R. A. 540), are controlling here. It was there said:

"Where a formal ceremony of marriage is shown between persons competent to enter into that relation, followed by cohabitation, the law raises the presumption of a valid marriage, and that the celebrant was legally authorized to perform the same, and this presumption can only be overcome by clear and convincing evidence to the contrary. Marriage by a person assuming to act as a minister, and being per verba de presenti, the person performing the ceremony must be presumed to have been a clergyman. (Patterson v. Gaines, 6 How. U. S. 550; Rex v. Brampton, 10 East, 282; Londonderry v. Chester, 2 N. H. 268; State v. Abbey, 29 Vt. 60; Meyers v. Pope, 110 Mass. 314; Redgrave v. Redgrave, 38 Md. 93.)"

The mere fact that Cassidy was captain of the ship does not exclude the idea that he might also have been a minister of the gospel. He performed a wedding ceremony in the usual manner. He caused the plaintiff to put her hand on the Bible when he pronounced the parties man and wife. We conclude there is a sufficient showing to invoke the presumption that Cassidy was authorized to join these people in holy wedlock. See numerous authorities cited in exhaustive note 34 A. L. R. 473. We cannot agree with appellant that plaintiff did not believe Cassidy was authorized so to act. Is she not entitled to the benefit of the presumption of innocence? What object could she have thus to engage in a wedding ceremony known to be illegal?

We think the facts of this case make applicable the provisions of section 33-110, Oregon Code 1930, which are as follows:

"A marriage solemnized before any person professing to be a minister or priest of any church or congregation of this state, or any judicial officer thereof, is not void, nor shall the validity thereof be in any way affected, on account of any want of power or authority in such person, if such person was acting at the time in the office or the capacity of a person authorized to solemnize marriage, and if such marriage be consummated with the belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage".

In performing this wedding ceremony, Cassidy certainly professed to be acting in the capacity of a person authorized to solemnize marriage. It was entirely foreign to his duties relative to the operation and management of the ship. The form of the ceremony was similar to that used by a minister of the gospel and there is every reason to believe that these parties thought they were being lawfully joined in marriage.

Plaintiff established a prima facie case of marriage in the light of the law as declared in *Re Estate of Megginson,* supra, and, since there was no evidence offered on the part of the defendants to rebut the strong presumption in favor of the validity of the marriage, there could be only one legal conclusion which the board of trustees was authorized to reach, namely, that the marriage was valid.

The judgment of the circuit court directing the payment of the pension to the plaintiff is affirmed.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.