Argued October 25, affirmed November 8, reconsideration denied
December 1, 1976, petition for review denied January 11, 1977

In the Matter of the Estate of John W. Wilmarth,
Deceased
LOUNSBURY, *Respondent,*
*v.*
WILMARTH, *Appellant.*
(No. 4577, CA 6479)
556 P2d 990

*Robert P. VanNatta,* St. Helens, argued the cause
for appellant. With him on the brief were VanNatta &
Petersen, St. Helens.

*William J. Daw,* Portland, argued the cause and
filed the brief for respondent.

[ 303 ]

Before Schwab, Chief Judge, and Fort and Lee, Judges.

PER CURIAM.

## PER CURIAM.

This proceeding was commenced by appellant, who filed a petition seeking a ruling that decedent had died intestate as to her. Decedent's will antedates appellant's marriage and it makes no provision for appellant. After a hearing, the circuit court ruled that appellant had not proved that her marriage to decedent was valid and denied her petition.

We agree with the decision of the trial judge and adopt his opinion:

"Lillian Wilmarth has filed a petition herein seeking to vacate the order entered in this cause on January 21, 1976 admitting to probate the Will of John Wilmarth. She alleges that the Will was revoked by her marriage to the testator subsequent to its execution.

"The Will was executed on January 8, 1971. Petitioner testified that rings were purchased in May 1971 and that she and the decedent went through a marriage ceremony in Peterson's Rock Gardens near Bend, Oregon on June 12, 1971. A person by the name of Will Brady purportedly performed the ceremony which was witnessed by Charles Peterson and Jan Peterson (no relation to the operators of the rock garden). A wedding certificate which was given to the contestant at the time was said to later have been stolen in a burglary of their motor home in New Orleans.

"Efforts have been made to locate Brady and the Petersons to verify the ceremony, but to no avail. Lillian Wilmarth stated that all arrangements for the ceremony were made by the decedent. Brady, who they met in a cocktail lounge several days prior to the ceremony claimed to have authority to perform marriages due to the fact that he 'worked in the Courthouse.' He also supplied the witnesses, who were unknown to the contestant or her husband. No application was made for a marriage license in Deschutes County, or any other County in Oregon. No medical examinations were obtained by either of the parties. Both had been married previously and divorced, and there was no legal impediment to a marriage.

"The two returned to Clatskanie and lived as husband and wife until the testator's death, except for a

period during 1973 when they were separated. Numerous exhibits were introduced in evidence indicating that the families of both the contestant and the decedent treated them as husband and wife. Income taxes were filed in their joint names, and the contestant was listed as the decedent's wife on his voter's registration form. She assisted him in his business affairs up until the time of his death. However, at that time, all of his savings and checking accounts, safe deposit box and real property were in his sole name.

"In applications for grants from Public Welfare she listed her name as Lillian Brown and marital status as a divorced woman. Statements to Welfare to this effect were made on four separate occasions: October 26, 1973, April 20, 1974, October 22, 1974 and April 22, 1975.

"It is well settled law that Oregon refuses to sanction and give approval to so-called common law marriages. Both the parties had been married before and the contestant was aware of the formalities required for a license and the medical examination.

"Oregon Revised Statutes 106.130 provides:

" 'A marriage solemnized before any person professing to be a judicial officer of this state or a minister of any church or congregations therein is not void, nor shall the validity thereof be in any way affected, on account of any want of power or authority in such person, if such person was acting at the time in the office or the capacity of a person authorized to solemnize marriage and if such marriage is consummated with the belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage.'

"In this case plaintiff testified Will Brady did not profess to be a judicial officer, but only that he 'worked in the Courthouse'. In view of the contestant's knowledge that a license is required before a marriage can be lawfully consummated, the Court does not believe that she could have had a reasonable belief that they were being lawfully married at the time. The presumptions which arise by virtue of the cohabitation of persons who profess to be married are mere rebuttable presumptions. In this case, the proof is clear that no legal marriage

[ 306 ]

actually took place. The contestant's petition will therefore be dismissed."

Affirmed.