ORFINGER, J.
 

 Malika Preure appeals from a final judgment in this domestic relations proceeding. We affirm the trial court’s resolution of the core issue in this appeal that the parties’ religious wedding ceremony in Oregon was not a legally valid marriage. However, we reverse as to several other aspects of the amended final judgment.
 

 Whether the parties’ 2003 Oregon religious ceremony amounted to a valid marriage, with its attendant legal consequences, is determined in accordance with the law of the place where the marriage occurred.
 
 Goldman v. Dithrich,
 
 131 Fla. 408, 179 So. 715 (1938). In 2003, Ms. Preure and Mr. Raouf Benhadj-Djillali participated in a religious marriage ceremony in Oregon, and subsequently relocated to Orange County, Florida. They never applied for or obtained a government issued marriage license. They also never paid a government fee to get civilly married, never supplied their vital statistics to the government, never received a marriage certificate, and never recorded their marriage in Oregon’s public records, which are all required by Oregon law. Still, while Ms. Preure expressed a desire to legally marry Mr. Benhadj-Djillali on several occasions after the 2003 religious ceremony, she claimed in the Orange County proceedings that a valid marriage had been effected. Mr. Benhadj-Djillali disagrees.
 

 Ms. Preure admits that as a general rule, a marriage license is required in
 
 *878
 
 Oregon for a lawful marriage to occur. Or.Rev.Stat. § 106.041(1) (2003);
 
 see In re Wilmarth’s Estate,
 
 27 Or.App. 303, 556 P.2d 990, 992 (1976). Nevertheless, she relies on section 106.150(2) of the Oregon Revised Statutes, a general savings clause, to validate the marriage. That statute provides:
 

 All marriages, to which there are no legal impediments, solemnized before or in any religious organization or congregation according to the established ritual or form commonly practiced therein, are valid.
 
 In stick case, the person presiding or officiating in the religious organization or congregation shall deliver to the county clerk who issued the marriage license the application, license and record of marriage in accordance with ORS 106.170.
 

 Or.Rev.Stat. § 106.150(2) (2003) (emphasis added). We conclude this savings clause is inapplicable because it presupposes the existence of a marriage license issued by the appropriate county clerk. The lack of a marriage license in this case was a legal impediment because the parties neither sought nor obtained an Oregon marriage license in connection with the 2003 religious ceremony. By referencing delivery of the marriage license to the appropriate county clerk, this statute ascribes legal significance to the existence of such license, which itself evidences the intent of the parties to enter into a legal marriage.
 

 Additionally, Oregon decisional law indicates that a lawful marriage presumes that the parties at least undertook efforts to satisfy the state’s requirements for a valid marriage, one of which is to obtain a marriage license. Or.Rev.Stat. § 106.041(1) (2003).
 
 See, e.g., Johnson v. Baker,
 
 142 Or. 404, 20 P.2d 407 (1933);
 
 In re Wilmarth’s Estate,
 
 556 P.2d at 992. Consequently, the trial court did not err in concluding that a valid marriage did not occur under Oregon law, given the evidence that the parties intended a purely religious ceremony and that a legal marriage would occur later, and took no steps to obtain a marriage license, which enjoys particular significance where Oregon’s general savings clause is sought to be invoked. For this reason, Ms. Preure’s attempt to utilize New York decisional law to support her proposition that a legal marriage can be found from a purely religious ceremony despite the absence of a marriage license lacks merit. New York law, unlike Oregon, expressly provides that a party’s failure to obtain a marriage license does not render a marriage void.
 
 See
 
 N.Y. Dom. Rel. Law § 25 (McKinney 2003). As a result, we find New York law inapposite.
 

 However, as Ms. Preure contends, the trial court did err in failing to incorporate into the final judgment Mr. Benhadj-Djillali’s trial stipulations that he would not take the couple’s two children outside of the United States without the court’s permission or seek passports for the children without a court order. Likewise, the trial court erred in assessing Mr. Benhadj-Djillali’s monthly child support obligation without making an express finding relating to the parties’ incomes and without referencing the child support guidelines.
 
 See Crouch v. Crouch,
 
 898 So.2d 177 (Fla. 5th DCA 2005).
 

 We reverse and remand the amended final judgment for correction and clarification of these two matters. Finding no merit in any of the other challenges raised by Ms. Preure, the amended final judgment is otherwise affirmed.
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 MONACO, C.J., and GRIFFIN, J., concur.