WARNER, J.
 

 Appellant, Blene Betemariam, timely appeals a final judgment of paternity and for partition, which determined, among other things, that she was not legally married to the appellee, Dr. Binor Said. The parties participated in a religious ceremony, but never obtained a marriage license. The court held that the marriage was not valid, and that the court thus had no authority to award alimony or order equitable distribution of assets. We affirm, as we conclude that Virginia, where the religious ceremony was performed, would hold that their unlicensed marriage was void ab initio. We reverse, however, the trial court’s refusal to require Said to pay the parties’ children’s educational expenses because Said had the ability to pay such expenses, which were in accordance with the parties’ standard of living.
 

 Betemariam and Said met each other in 2000 when both were married but separated from their respective spouses. They began living together, and Betemariam gave birth to twins the next year. In the fall of 2002, both Betemariam and Said had finalized their divorces to their prior spouses, and they began discussing marriage. Said’s father wished his son to be married in the Islamic faith. Although Betemariam was not a Muslim, she agreed to marry Said in an Islamic ceremony, which occurred on January 1, 2004, in Alexandria, Virginia. The service was conducted by an Imam in accordance with Islamic law. The couple received a marriage certificate, written in Arabic and signed by Said’s father and uncle as witnesses. Said and Betemariam did not obtain a marriage license before their religious ceremony, nor did they file their marriage certificate with any clerk of court.
 

 Betemariam testified that her understanding was that the Imam — as an official with the authority to marry people — would take care of everything necessary for her and Said to be recognized as a married couple. Said never told her that they needed a civil license in advance of their wedding. However, she admitted that she had obtained a marriage license for one of her previous two marriages. Said testified that he did not believe they needed to get a marriage license in advance of the wedding. Said testified that the couple’s intent in going through with the wedding ceremony was to sanctify their union and to make a religious commitment. Said never thought that he would be in court “discussing whether I have a religious or legal marriage.”
 

 The parties moved to Florida and eventually settled in West Palm Beach where Said joined a radiology practice. Following the move to West Palm Beach where they purchased a home, Betemariam was the primary care-giver for the children and
 
 *124
 
 did not work outside the home. The parties eventually enrolled their children at the Rosarían Academy, a private school that costs $13,000 per child each year. At the time of trial, the children had attended Rosarían for about five years. The parties opened joint bank accounts and purchased other property, taking title jointly as husband and wife.
 

 When Betemariam filed for divorce in 2007, Said moved to dismiss the proceedings, claiming that the parties were never legally married. Betemariam amended her petition to include a count for equitable relief in the event the court determined that the parties were not legally married to each other. Said counter-petitioned for paternity, visitation, and child support.
 

 The case proceeded to trial. After hearing the foregoing evidence, the court entered a final judgment of paternity and for partition, ruling that the parties were never legally married and that the court was without jurisdiction to consider equitable distribution or alimony. The court reasoned that although the parties entered into a religious ceremony, they had not obtained a marriage license in any of the states in which they had resided. Because both parties had been married previously, the court discounted any claim of lack of knowledge of the licensing requirement.
 

 The court did, however, resolve the paternity and child issues. It designated Betemariam as the primary residential custodian, awarded child support, and required Said to maintain an insurance policy for the benefit of the children. The court also ordered partition and sale of both parcels of property owned by the parties. Betemariam moved for rehearing and, among other things, requested that the final judgment be amended to require Said to pay the costs of private school education for the children. The trial court denied the motion, prompting this appeal.
 

 The issue of whether the parties’ religious wedding ceremony amounted to a valid marriage is determined in accordance with the law of the place where the putative marriage occurred.
 
 See Preure v. Benhadj-Djillali,
 
 15 So.3d 877, 877 (Fla. 5th DCA 2009);
 
 see also Goldman v. Dithrich,
 
 131 Fla. 408, 179 So. 715, 716 (1938). Here, because the wedding ceremony occurred in Virginia, we look to Virginia law to determine whether the parties in this case were validly married. Betemariam argues that the Virginia statute requiring the parties to obtain a marriage license to constitute a valid marriage is directory, not mandatory. Therefore, the trial court could determine that the marriage was valid based upon the parties’ belief in the validity of their marriage.
 

 Virginia statutory and case law is contrary to Betemariam’s position. Section 20-13 of the Code of Virginia, entitled “License and solemnization required,” provides as follows: “Every marriage in this Commonwealth
 
 shall
 
 be under a license and solemnized in the manner herein provided.” (emphasis supplied). Additionally, Virginia’s statutory scheme provides that the validity of a marriage is not affected by certain defects:
 

 § 20-31. Belief of parties in lawful marriage validates certain defects
 

 No marriage solemnized
 
 under a license
 
 issued in this Commonwealth by any person professing to be authorized to solemnize the same shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected on account of any want of authority in such person, or any defect, omission or imperfection in such license, if the marriage be in all other respects lawful, and be consummated with a full belief on the part of the persons so married, or either
 
 *125
 
 of them, that they have been lawfully joined in marriage.
 

 Va.Code § 20-81 (emphasis supplied).
 

 In
 
 Offield, v. Davis,
 
 100 Va. 250, 40 S.E. 910 (1902), the Supreme Court of Virginia interpreted a former version of the Virginia Code, which contained language similar to the current statutory language, prescribing that “every marriage in this state shall be under a license and solemnized in the manner herein provided.” 40 S.E. at 914. The court held that the statute “wholly abrogated” common law marriage, and “no marriage or attempted marriage, if it took place in this state, can be held valid here unless it has been shown to have been under a license, and solemnized according to our statutes.”
 
 Id.
 

 We view
 
 Offield
 
 as making the marriage license mandatory, not directory, and other Virginia courts do likewise. In a case on “all fours,” a Virginia circuit court has held that the parties’ marriage was void ab initio when they were married in a religious ceremony but failed to obtain a marriage license.
 
 See In re Ejigu,
 
 79 Va. Cir. 349, 2009 Va. Cir. LEXIS 127, 2009 WL 4704510 (Sept. 30, 2009) (Klein, J.). In that case, the petitioners, a putative husband and wife, sought to have their marriage affirmed under section 20-31 and 20-91, Code of Virginia. The latter statute provides a vehicle for a court to issue a decree affirming a marriage where it is “denied or doubted by either of the parties,” and the court is presented with “due proof of the validity thereof.” The parties had been married in a religious ceremony but did not obtain a marriage license. They had conducted themselves as husband and wife since their marriage. Nevertheless, the court determined that it could not affirm their marriage, which was void ab initio for failure to obtain the license.
 

 The court found that section 20-31 could not be used to validate the marriage, as that section allowed correction of defects with respect to the officiant’s authority or defects in the marriage license. It did not cure a marriage void ab initio. Quoting from
 
 Offield,
 
 the court held that in order to be valid under Virginia law, the marriage must be under a license and properly solemnized. One without the other is not enough. The court looked to a similar case of
 
 In re Kulmiye & Ismail,
 
 77 Va. Cir. 67, 2008 Va. Cir. LEXIS 121, 2008 WL 8130992 (2008) (Roush, J.), involving nearly identical facts to those in this case. In that case, as well, the court held that the marriage was invalid and could not be affirmed when no marriage license was ever issued. In
 
 Ejigu,
 
 Judge Klein concluded:
 

 [T]he defect presented was not an issue of the officiant’s authority or the contents of the marriage license. The defect was the complete non-existence of the license itself. Under the plain meaning of the three above referenced statutes, this Court has no authority to affirm a marriage that was entered into without a license. While the parties may remain married according to their religion, their marriage ceremony conferred no legal rights between them under the laws of the Commonwealth of Virginia.
 

 (footnote omitted). As Virginia has interpreted its requirement of a marriage license as mandatory, and the parties in this case did not obtain a marriage license, they were not validly married under Virginia law. The trial court had no choice but to determine that no legal marriage had occurred. This result is also consistent with the Fifth District’s reasoning under a similar circumstance involving Oregon law.
 
 See Preure,
 
 15 So.3d at 878.
 

 Because the trial court also found, as appears undisputed in the record, that
 
 *126
 
 neither party could claim lack of knowledge of the marriage license requirement, both parties were equally responsible for the invalidity of their marriage. Thus, we also agree with the trial court that Betem-ariam could not claim equitable alimony.
 
 See Burger v. Burger,
 
 166 So.2d 433 (Fla.1964) (where putative wife is equally responsible with putative husband for invalidity of marriage, wife is not entitled to permanent alimony).
 

 The trial court did, however, have the authority to determine the issues involving the children pursuant to both parties’ requests in their pleadings and its authority pursuant to Chapter 742, Determination of Parentage. Betemariam contends on appeal that the trial court abused its discretion in failing to require Said to pay for the children’s private schooling when it was the standard of living of the children and Said could well afford to pay it. The trial court failed to mention it in the final judgment and simply denied the motion for rehearing requesting it.
 

 On appeal, Said does not contest his ability to pay, nor does he contest that the children have always been educated in private institutions. Rather, he maintains that Betemariam did not request such relief. We disagree.
 

 It is well established that a court may order a parent to pay for private educational expenses if it finds that the “parent has the ability to pay for private school” and the “expenses are in accordance with the family’s customary standard of living and are in the child’s best interest.”
 
 Wilson v. Wilson,
 
 559 So.2d 698, 700 (Fla. 1st DCA 1990);
 
 see also Kaiser v. Harrison,
 
 985 So.2d 1226 (Fla. 5th DCA 2008). An award of a child’s private school expenses is reviewed for abuse of discretion.
 
 See Thomas v. Thomas,
 
 776 So.2d 1092, 1094 (Fla. 5th DCA 2001).
 

 In any event, this issue was tried by the parties’ consent.
 
 See, e.g., Smith v. Smith,
 
 971 So.2d 191, 194-95 (Fla. 1st DCA 2007);
 
 Hemraj v. Hemraj,
 
 620 So.2d 1300, 1301 (Fla. 4th DCA 1993). Although the joint pretrial statement did not specifically include a request for such relief, the parties both presented evidence on the issue of the children’s private schooling. Betemariam testified to her desire for the children to remain at the Rosarían Academy through the eighth grade. Betemar-iam’s forensic accountant also testified to the substantial amount of income Said would have left over even if he paid for the children’s private school. By contrast, Said testified that he did not want the court to order him to continue to pay for private schooling at Rosarían Academy, explaining that he thought Rosarían was “too structured” and that there were other schools available, including a good public school. In closing argument, Said’s attorney specifically requested that the court not order payment of the private schooling. It is disingenuous to suggest that the issue was not tried, when counsel asked the court to address the issue.
 

 Betemariam’s petition sufficiently pleaded her request for an award of private school tuition, even if she did not specifically mention that request within the section of her petition styled “prayer for relief.”
 
 See Raskin v. Raskin,
 
 625 So.2d 1314, 1315 (Fla. 4th DCA 1993) (“Ordinarily, it is the facts alleged, the issues, and the proof,
 
 not the form of the prayer for relief,
 
 which determine the nature of the relief to be granted.”) (emphasis added). In the body of the wife’s amended petition for dissolution, Betemariam specifically stated that she “requests that the Husband be ordered to continue to provide a private school education for the minor children at Rosarían Academy or another private school of comparable quality.”
 

 
 *127
 
 We conclude on this record that the court abused its discretion in failing to order Said to pay for private tuition for his children. His income clearly could support such payments, and the parties had sent their children to Rosarían Academy for five years. They had never attended another school. Everyone testified to how well the children were doing in life generally.
 

 It appears that the court may have been swayed by Said’s argument that Betemar-iam had not properly requested that relief, but, as noted above, she requested it in her pleadings, and in any event we find that the issue was tried by consent. Thus she was entitled to make that claim and have the court adjudicate the issue. We therefore reverse with instructions that the court order Said to pay for the private school tuition of the children.
 

 As to all other issues raised, we find no error. We therefore affirm the final judgment except as to the failure to order Said to pay private school tuition on which we reverse and remand for the trial court to amend its final judgment consistent with this opinion.
 

 POLEN and LEVINE, JJ., concur.