712 So.2d 1198 (1998)
Sandra E. ARCHER, Appellant,
v.
Clyde W. ARCHER, Appellee.
No. 97-1821.
District Court of Appeal of Florida, Fifth District.
June 19, 1998.
Rehearing Denied July 24, 1998.
Joan Stefanec Briggs, Daytona Beach, for Appellant.
Richard J. D'Amico, Daytona Beach, for Appellee.
PETERSON, Judge.
Sandra E. Archer, the former wife, appeals the final judgment of dissolution of marriage which treated as marital assets certain real and personal property she acquired from her mother. The former wife's mother had created joint tenancies with rights of survivorship with the former wife in her home and a money management account. After the mother's death, the former wife conveyed the real property to her then husband and herself as tenants by the entireties. She also transferred the personal property into a joint account.
The personal property acquired from the former wife's mother was a Merrill Lynch Cash Management Account (CMA). Sometime during the marriage and after her mother's death, the former wife changed the ownership description of the CMA account to a joint account with her former husband. The CMA account consisted of a money fund, *1199 certificates of deposit, Ginnie Mae mortgage securities and stocks. The specific stocks were AT & T, Brunswick Corp., FPL Group, General Electric and Aegis Industries. The CMA monthly statements provided detailed summaries of income and current values for, and additions and withdrawals to, each of the several assets within the account. Sometime after the joint tenancy between the spouses was created, the parties began using the CMA account as a checking account to purchase anything from "food to materials to gas." The former husband testified, however, that with respect to the securities and stock, each had remained intact during the marriage since the death of the former wife's mother. No alterations had been made to these investments and any change in their value, with the exception of routine amortization of the Ginnie Mae's, was solely a result of market fluctuation.
In the dissolution, the former wife attempted to establish a special equity in the real property and the CMA account. The trial court determined that the former wife failed to "rebut the [gift] presumption" as to both types of property and thus, she was deemed to have given a one-half interest in these assets to her former husband.
We agree with the trial judge that a presumption of a gift is established when a tenancy by the entireties is created by a spouse with his or her separate real property. This presumption is created by section 61.075(5)(a)5, Florida Statutes (1997). The burden to prove a claim of some special equity, or more properly, that no gift was intended, is upon the presumed donor. Robertson v. Robertson, 593 So.2d 491 (Fla.1991). The former wife failed to rebut the presumption that a gift of one-half of the property was made when she retitled the property in her and her former husband's name. We therefore affirm the trial court's ruling that the real property is marital property.
We partially agree with the trial court that a presumption of a gift also arose as to the CMA account. The presumption arose, however, only as to those assets in the CMA account which became commingled with marital funds.
The presumption of a gift arising in section 61.075(5)(a)5, Florida Statutes, clearly extends only to real property. Chapter 61 of the Florida Statutes does not contain a similar presumption for personal property. Section 61.075(5)(b)2 describes as non-marital assets, those assets acquired separately by either party by noninterspousal gift. The statute does not address the situation confronted here, where nonmarital personal property, during the marriage, is placed into joint ownership between the spouses either as a joint tenancy with rights of survivorship or as a tenancy by the entireties.
When a joint account, originally established with non-marital property, is intermingled with marital property so that the property becomes non-traceable, that is, it becomes incapable of being specifically identified as the earlier separate property, such property is properly categorized as marital. The commingling of the marital and non-marital property creates a presumption, similar to the one set forth in section 61.075(5)(a)5 for real property, that a gift of one-half of the jointly held funds was made to the other spouse. Amato v. Amato, 596 So.2d 1243 (Fla. 4th DCA 1992). We are aware of the conclusion in Thibault v. Thibault, 632 So.2d 261, 267 (Fla. 1st DCA 1994), that Amato held "the same [statutory] rule [of a gift presumption] applies with respect to personal property [as to real property]." We do not, however, view Amato as establishing such a broad rule, despite Amato `s language suggesting the difficulty, under the fourth district's own precedent, of having one rule for real property and another for personal property. Amato at 1245. We view Amato as simply re-affirming the principle that a presumption of a gift arises where commingling occurs. The footnote in the Amato opinion, in fact, suggests a different result may have been obtained had the funds been traceable: "There is no serious suggestion that the original $70,000 deposit is capable of being traced some six years after the fact." 596 So.2d 1243, 1244, n. 1.
In the instant case, the former husband testified that certain of the assets in the joint CMA account were specifically identifiable, could be traced back to their origin *1200 from the former wife's mother, and had remained unchanged since the former wife acquired the interest in them. In our view, those circumstances do not create a presumption of a gift in the entire CMA account. Once the former wife demonstrated that certain specific, identifiable assets within the joint CMA account originated as her separate non-marital property, and never became commingled or otherwise untraceable, it became the burden of the former husband to prove, as to those assets, that the former wife intended to make a gift to him of one-half of them. The creation and maintenance of a joint tenancy in personal property is not enough to establish the presumption that a gift was thereby intended.
The trial court incorrectly assumed a presumption of a gift arose as to all the investments in the CMA account when the account was designated as a joint account. The specific problem of commingling did cause some of the nonmarital assets within the CMA to become marital. The problem of non-traceability did not exist, however, with respect to other assets in the account. Because of the incorrect assumption the trial court made with respect to the gift presumption, we remand for further consideration and the taking of additional evidence, if necessary, to determine whether a gift was ever made by the former wife to the former husband, of the non-commingled assets. This determination is to be made without the benefit of any gift presumption. The specific assets subject to this determination are the AT & T stock, the General Electric stock, the FPL Group stock, the Brunswick Corp. stock, the unamortized principal on the three Ginnie Mae mortgage securities, and the Aegis Industries stock. The remaining assets obtained by the former wife from her mother have become untraceable as a result of being commingled with marital assets during the course of the marriage; therefore, the assets not specifically identified above were properly designated by the trial court as marital assets.
We affirm the judgment dissolving the marriage but vacate the equitable distribution therein, so that on remand, the trial court, in re-addressing the gift issue in light of this opinion, may reconsider the overall equitable distribution scheme.
REVERSED IN PART, AFFIRMED IN PART, REMANDED.
GOSHORN and THOMPSON, JJ., concur.