PLEUS, J.
Angela Smith (“the wife”)' appeals the final judgment dissolving her marriage to Michael Smith (“the husband”). She argues that the trial court erred by not properly distributing the marital assets and by failing to award her permanent periodic alimony. We agree that the trial court erred in distributing the marital assets. After thoroughly reviewing the records, we affirm the trial court’s refusal to award alimony.
On appeal, the wife contests the distribution of two major assets, referred to as the Oregon property and the Moultrie Heights property.
The Oregon Property
Prior to the parties’ 12-year marriage, the husband purchased a cottage in Oregon for $27,500. During the marriage, the parties rented the Oregon cottage and used, this rental income to pay living expenses, paint the cottage and pay ad valorem taxes. While the divorce was pending, he sold the Oregon property, netting $148,854.75. He deposited the funds into a credit union account and used some of the money to pay temporary support and taxes on the parties’ Florida properties. His financial affidavit reflected a balance in that account of $112,564.21.
The trial court found as follows regarding the Oregon property:
5. During the marriage and after the separation of the parties, the Husband sold some real property located at 51839 Tumalt Road, Corbett, Oregon that was titled in his name and netted approximately $148,000. There are currently $112,000 in net proceeds from that sale. The Husband has capital gains liability of $30,000.' The purchase price was $27,500 - in the 1980’s. As such, the Court finds as a marital- asset, $82,000 minus $30,000 for a total of $52,000 mi *820 nus $27,500 special equity or $24,500 in Wife’s equitable share. The proceeds were deposited in the Marketplace Bank. The Wife has testified .that she assisted the Husband through physical efforts beyond the normal, marital duties and marital funds in the material enhancement of this property. The Husband has testified that material enhancement by the Wife' to this property were minor. The Court finds the Wife’s testimony more credible in that she assisted in installing a wood stove, helped install a new stone floor, helped reshingle the roof, helped build chimney wood shed, pump house along with repainting rooms and installing insulated curtains. She clearly helped to improve the property through her efforts.
In reviewing a trial court’s equitable distribution of marital assets, the distribution scheme will be upheld absent an abuse of discretion. Hoirup v. Hoirup, 862 So.2d 780 (Fla. 2d DCA 2003). The wife argues that the trial court abused its discretion by awarding her only $24,500 from the proceeds of the sale of the Oregon property. She claims she is entitled to half of the funds remaining in the credit union account after subtracting the $27,500 special equity credit to the husband reflecting his initial investment prior to marriage. The trial court found that the proceeds from the sale of the Oregon property, less the special equity- to the husband reflecting the amount of his initial investment, constituted a marital asset.
Apparently, the court twice deducted $30,000 for capital gains payments made by the husband. These deductions are not supported by the record. The record shows that the husband paid $30,000 in capital gains tax on the $200,000 he received in a business settlement with his brother. It is clear that the trial court considered the $200,000 to be marital property based on its statements regarding commingling of assets and gifts. We believe the court erred by (1) deducting $30,000 for capital gains tax payments because those payments did not relate to the sale of the Oregon property and because the payments were made from marital funds; and (2) deducting the $30,000 a second time. The proper calculation should have been $112,000 less a special equity of $27,500 to the husband, which equals $84,500. The wife’s half share of this amount would be $42,250. Assuming there was capital gains paid on the Oregon property, the amount actually paid- should be deducted only once. One half of the amount of taxes paid should then be subtracted from $42,250.
The Moultrie Heights Property
Regarding the Moultrie Heights property, the trial court found as follows:
During the marriage and prior to the sale of a mobile home park owned by the Husband and his brother, the parties lived at the Wagon Wheel Mobile Home Park on U.S. 1 South, St. Augustine, Florida. The Husband and his brother were business partners. The Husband received a modest management allowance each month of $750 plus the use of a mobile home to live in with the Wife. The Husband and Wife testified that the Wife assisted in various duties at the mobile home park during the marriage. Eventually, the Husband sold his interest in the mobile home park to this brother, received $200,000 and approximately 27 acres in Moultrie Heights, south of St. Augustine, Florida near U.S. 1. The $200,000 was divided in half with the Husband placing $100,000 in an account in his Wife’s name and $100,000 in an' account in his name. Each party was named the beneficiary of the other party’s account. The Husband later acquired approximately 2 acres adjacent to *821 the other property in Moultrie Heights. The taxed assessed value of the Moultrie Heights property is $418,000. The actual value of the Moultrie Property is not known at this time. The Wife has a 25% ownership in the property, or $104,500. The Husband has a 75% interest or $313,500.
[[Image here]]
The Husband purchased the Wagon Wheel Mobile Home Park for $10.00 on August 12, 1970. The Husband received $200,000 and approximately 27 acres in Moultrie Heights, tax assessed value of $418,000, for his half of the Wagon Wheel Mobile Home Park. The testimony of the Husband, the Wife and the Husband’s brother is that the Wife worked' in various capacities including managing the mobile home park and Improving the condition of the mobile homes at the mobile home park, by cleaning the homes prior to renting them, pulling up and replacing carpet, balancing ledgers, bookkeeping and being on-call for twenty-four hours at a time. She is entitled to one-half of his 50% share or 25%.
The re-titling of non-marital property to include the spouse’s name is considered a gift and therefore becomes marital property. See Section 61.075(5)(a)5, Florida Statutes; see also Robertson v. Robertson, 593 So.2d 491 (Fla.1991); Archer v. Archer, 712 So.2d 1198 (Fla. 5th DCA 1998). The Husband titled the 27 acres in Moultrie Heights that were received in the dissolution of the partnership of Wagon Wheel Mobile Home Park, and the two additional acres Moul-trie Heights acquired later in the Wife’s name.
[[Image here]]
The parties are tenants in common as to the property located in Moultrie Heights. The property located in Moul-trie Heights shall be sold and the proceeds shall be divided on a 75%- Husband, 25% Wife basis. Both parties shall cooperate in the sale of this property. The Husband may buy out the Wife’s interest, i.e., 25% of $418,000 or $104,500-minus $7,500 a year credit for taxes paid by the Husband for the past three years reflecting a net payoff to the Wife of $82,000.
The wife makes three arguments relating to the trial court’s distribution of the Moultrie Heights property: the court erred by (1) awarding her 25 perceht instead of 50 percent of the value of the property; (2) valuing the property based on the tax assessed value instead of the fair market value; and (3) deducting $22,500 from the wife’s share for property taxes paid from 'marital funds.
50 percent vs. 25 percent of the Moultrie Heights Property
It appears from reading the trial court’s findings that it made a simple math error. It found that “The Husband received $200,000 and approximately 27 acres in Moultrie. Heights, tax assessed value of $418,000, for his half of the Wagon Wheel Mobile Home Park.” It then determined that the wife was entitled to half of his share due to the efforts she made during the marriage and also due to the retitling of the settlement property. This should have resulted in the wife receiving 50 percent of the settlement, ie., 50 percent of the $200,000 and 50 percent of the Moultrie Heights property. But the court erroneously stated, “She is entitled to one-half of his 50% share or 25%” (emphasis added). The court then applied this erroneous conclusion as follows:
The parties are tenants in common as to the property located in Moultrie Heights. The property located in Moul-trie Heights shall be sold and the pro- ■ ceeds shall be divided on a 75% Husband, 25% Wife basis. Both parties shall cooperate in the sale of this prop *822 erty. The Husband may buy out the Wife’s interest, i.e., 25% of $418,000 or $104,500-minus $7,500 a year credit for taxes paid by the Husband for the past three years reflecting a net payoff to the Wife of $82,000.
Accordingly, the trial court erred in awarding the wife only 25 percent of the Moultrie Heights property instead of 50 percent.
The husband concedes that the wife was entitled to 50 percent of the 1998 settlement, but argues that the trial court correctly determined that she should receive 25 percent of the Moultrie Heights property because all that was conveyed in the settlement was the brother’s 50 percent interest in it. The husband maintains that he owned the other half of the Moultrie Heights property outright, prior to the settlement.
The title documents admitted into evidence indicate that the Moultrie Heights property was purchased by the husband and his brother in 1992, during the marriage. The brother then deeded the property to the husband and wife in 1998. Section 61.075, Florida Statutes (2004), contains two evidentiary presumptions that appear to apply:
(5) -As used in this section:
(a) “Marital assets and liabilities” include:
5. All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim for a special equity,
and
(7) All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities. Such presumption is overcome by a showing that the assets and liabilities are nonmarital assets and liabilities. The presumption is only for evidentiary purposes in the dissolution proceeding and does not vest title.
§§ 61.075(5)(a)5. and (7), Fla. Stat. (2004) (emphasis added). In order for the trial court’s determination that the wife was only entitled to 25 percent of the property, there would have to exist competent substantial evidence in the record to overcome these presumptions.
The husband testified, contrary to the deed, that his property was purchased pri- or to the marriage. Second, the brother testified that he only conveyed his 50 percent interest in the Moultrie Heights property to the husband and wife as part of the settlement. The brother stated that the husband already owned the other half of the Moultrie Heights property. Because the parties were married in 1988 and the deed reflects that the brothers purchased the Moultrie Heights property in 1992, the husband’s testimony is not competent and the brother’s testimony is mistaken. Further, although the partnership existed pri- or to the marriage, the husband failed to offer any evidence that the Moultrie Heights property was purchased with non-marital assets from the partnership. Therefore, the husband failed to overcome the presumption that his 50 percent share in the Moultrie Heights property was marital property because it was purchased during the marriage.
The husband’s argument also ignores the fact that the entire property was titled in both the husband and wife’s name. As the trial court noted, “The re-titling of non-marital property to include the spouse’s name is considered a gift and therefore becomes marital property. See Section 61.075(5)(a)5, Florida Statutes; see also Robertson v. Robertson, 593 So.2d 491 *823 (Fla.1991); Archer v. Archer, 712 So.2d 1198 (Fla. 5th DCA 1998).”
In short, the wife was entitled to 50 percent of the Moultrie Heights property, not 25 percent.
Assessed Value vs. Fair Market Value
The wife argues that the trial court erred in valuing the property based on its assessed value but she failed to present any evidence of the fair market value. In fact, the only evidence of the value of the Moultrie Heights property was its assessed value. Although section 61.075(3)(b) requires the court to value significant assets, and fair market value is the standard method of evaluating such an asset, Hess v. Hess, 654 So.2d 199 (Fla. 4th DCA 1995), no evidence of the fair market value was presented. Thus, the trial court did not abuse its discretion in determining the wife’s share based on the assessed value because that was the only evidence of value presented.
Additionally, the wife cannot now demand that the property be sold when she failed to request partition in her pleadings. See, e.g. Watson v. Watson, 646 So.2d 297 (Fla. 5th DCA 1994).
The $22,500 Deduction for Property Tax Payments
The wife argues that the trial court erred by deducting $22,500 from her share of the Moultrie Heights property for the previous three years of property tax payments made by the husband because the husband paid those taxes from marital property. The husband testified that he paid the taxes from the credit union account, which the trial court determined was marital property. Accordingly, the trial court erred by deducting this amount from the wife’s share. The wife should be entitled to receive 50 percent of the assessed value of $418,000 on the Moultrie Heights property, or $209,000.
Accordingly, we reverse and remand for further consideration of equitable distribution.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
SHARP, W., and TORPY, JJ., concur.