898 So.2d 177 (2005)
Eugene M. CROUCH, Appellant,
v.
Jill S. CROUCH, Appellee.
No. 5D03-3073.
District Court of Appeal of Florida, Fifth District.
March 11, 2005.
Rehearing Denied April 8, 2005.
*178 Horace Smith, Jr., P.A., Smith, Hood, Perkins, Loucks, Stout & Orfinger, P.A., Daytona Beach, for Appellant.
Rhoda Bess Goodson and Andrea M. Kurak of Cobb & Cole, Daytona Beach, for Appellee.
PLEUS, J.
The former husband appeals from a final judgment dissolving the parties' ten year marriage, distributing certain assets, and adjudicating the parties' support obligations relative to the parties' two minor children. The former husband raises four challenges to the judgment. These relate to: (1) the trial court's failure to award guideline child support, or alternatively, failing to explain why it deviated from the child support guidelines; (2) the award of exclusive use and possession of the marital home to the former wife where such award was not incident to child support and without provision for the sale of the home upon the former wife's remarriage; (3) the trial court's treatment of the parties' financial accounts, and (4) the trial court's finding that the former husband reimburse the former wife for one-half of their older son's orthodontia expenses.

Facts
The parties were married on September 9, 1990 and separated in October 2000. They have two boys, who at the time of trial, were 14 and nearly 12, respectively.
At the time of trial, the former husband was 48 years of age and in good health. He is a medical doctor with a private practice and has a monthly income of approximately $11,000 or $132,000 per year.
The former wife was 47 years of age and confirmed she had a 2001 income of $740,647 though she claimed in her financial affidavit a monthly income of $7,750.00. The former wife testified that though trial occurred in July 2003, she had yet to complete her 2002 income tax return. The former wife's net worth was primarily accumulated through gifts from her family. She presently sits on the board of directors of her family's corporation. The former wife's investments had a 2001 book value of over $2.4 million.
The former wife's physical health is good though at times during the marriage she suffered from depression, exacerbated by alcohol abuse. The former wife has sought and successfully completed treatment programs and is capable of managing her parental responsibilities.
The trial court awarded shared parental responsibility but did not designate a primary residential parent, instead allowing the former husband to have the youngest child four days a week with the former wife having the child three days. The trial court allowed the former wife to have the oldest child four days a week with the *179 former husband having the child three days a week.
A prenuptial agreement executed by the parties in 1990 dictated the manner in which many of their assets would be divided. Premarital and individually held property were to remain with the original owner though gifts between the parties were permitted. Two of the assets at issue below were the marital home and an A.G. Edwards investment account.
The parties jointly purchased the marital home in 1994. There is no mortgage on the home which was valued in 2001 at $700,000. The trial court found that the home is a marital asset[1] and granted the wife exclusive use and possession until the youngest child reaches age 18. The dissolution decree does not provide for termination of the exclusive possession if the former wife remarries.
According to the former husband, the A.G. Edwards account had been his prior to the marriage. The former wife's name was put on the account as a courtesy and she never accessed the account during the marriage. The wife claimed the account was a joint account. The account had a balance of approximately $165,000. The trial court found the account to be a marital asset and ordered it be equally divided.
The former husband additionally testified that the parties had Sun Trust checking/savings accounts which were in their joint names. The former wife admitted that the Sun Trust accounts were in joint names but asserted that she put the former husband's name on them as a courtesy. The dissolution decree is silent as to the Sun Trust accounts.
As to the children, there was evidence that they each have irrevocable trusts established by their maternal grandparents. These trust funds have a value in excess of $1.1 million. The former wife is the sole trustee of these funds. The former wife requested no child support and has used some of the income from the trusts to support the children, such as paying their private school tuition and summer camps. The former husband requested child support. The trial court ordered no child support by either party but required the parties to share equally the children's private school expenses as well as medical and dental insurance premiums and expenses. The court also ordered the former husband to reimburse the former wife for one-half of the older son's orthodontia expenses. This was based on the former wife's trial testimony that she had paid for the child's orthodontia work "in the entirety," with no contribution from the former husband. In his motion for new trial/rehearing, the former husband attached a copy of charges showing him as the responsible party for $3,260.30 in orthodontia fees which were billed and paid by him three months before the parties separated. The former husband also attached a statement reflecting a balance in the Sun Trust checking accounts of approximately $29,000. The trial court denied this post-trial motion.

Child Support
The former husband requested guideline child support and he argues that the trial court erred in declining to award guideline support or provide an adequate explanation for deviating from the support guidelines. He points out that the testimony below reflected that the former wife had a substantially greater income but the trial court ordered no support.
*180 The former wife counters that the court made specific findings on the issue of child support, to wit: the children are beneficiaries of trusts, the children's needs are being met, both now and into the foreseeable future, both parents are financially secure, both had adequate means of providing for the children's needs and finally, that time sharing was equally divided between the parents. The former wife argues that based on these findings, the trial court had the discretion to decline to order guideline support.
Section 61.30, Florida Statutes (2003) contains child support guidelines. The "guideline amount as determined by this section presumptively establishes the amount the trier of fact shall order as child support," though the court may deviate, "plus or minus 5 percent, from the guideline amount, after considering all relevant factors." § 61.30(1)(a). A deviation of more than five percent from the guideline amount is proper only upon a written finding by the court explaining why ordering such guideline amount would be unjust or inappropriate. Id. Section 61.30(1)(a) further provides that:
Notwithstanding the variance limitations of this section, the trier of fact shall order payment of child support which varies from the guideline amount ... whenever any of the children are required by court order or mediation agreement to spend a substantial amount of time with the primary and secondary residential parents. This requirement applies to any living arrangement, whether temporary or permanent.
The guideline matrix begins with a combined monthly available income of $650.00 and goes up to $10,000.00. For combined monthly income greater than that "the obligation shall be the minimum amount of support provided by the guidelines plus the following percentages multiplied by the amount of income over $10,000: one child, 5.0%, two, 7.5%...."
Two problems exist with the child support issue. First, the trial court made no finding as to the incomes of each parent. Second, the court failed to calculate the total support obligation as per section 61.30, Florida Statutes. See Jones v. Johnson, 747 So.2d 1066 (Fla. 5th DCA 2000).
This is not to imply that the trial court erred in its ultimate decision declining to adopt guideline support. This case offers several interesting twists relative to child support. First, each parent was essentially given equal custody of the children on a rotating basis. As the trial court noted, under such circumstances, where neither parent is designated as "primary" or "secondary" residential parent, a court has discretion to deviate from the support guidelines. See Constantino v. Constantino, 823 So.2d 155 (Fla. 4th DCA 2002).
Second, as the trial court found (and neither party disputes) each party is financially able to meet the support needs of the children during the period when the children reside with them. In other words, there is no indication of any need on the part of either parent for an award of child support.
Third, while the parents are able to meet the children's support needs, one parent, the former wife, appears to earn substantially more income, derived from non-marital assets, than the former husband. Does this disparity in income, of itself, warrant as a matter of law, an award of child support to the former husband? Finley v. Scott, 707 So.2d 1112 (Fla.1998), indicates a negative answer to this question.
Finley involved a paternity suit against a professional basketball star. Child support under the guidelines would have exceeded *181 $10,000 a month but the mother and child's total living expenses were about $2,000 a month. The trial court awarded child support of $5,000 a month, $3,000 of which was to be paid into a guardianship trust. The trial court found that the mother's request for $10,000 a month in child support had no economic relevance to the bona fide actual needs of the child. The mother appealed, arguing the trial court should have awarded the full guideline amount of $10,011. This Court reduced the award to $2,000. The supreme court quashed the appellate decision and reinstated the $5,000 award. In affirming the trial court, the supreme court explained:
To assist trial courts in making this fact-intensive decision in future cases, we expressly point out that a trial court is to begin its determination of child support by accepting the statutorily mandated guideline as the correct amount. The court is then to evaluate from the record the statutory criteria of the needs of the child, including age, station in life, and standard of living, the financial status and ability of each parent, and any other relevant factors. If the trial court then concludes that the guideline amount would be unjust or inappropriate and also determines that the child support amount should vary plus or minus five percent from the guideline amount, the trial court must explain in writing or announce a specific finding on the record as to the statutory factors supporting the varied amount. Absent an abuse of discretion as to the amount of the variance, the trial court's determination will not be disturbed on appeal if the calculation begins with the guideline amount and the variation is based upon the statutory factors.

707 So.2d at 1117 (emphasis supplied).
Finley reflects that the fact that a parent earns substantially more than is necessary to meet the actual and bona fide needs of the child does not require assessment of child support over and above those bona fide actual needs. Rather, the trial court has discretion, in accordance with the dictates of section 61.30, to vary the support obligation.
In the instant case, while the trial court considered the needs of the children, and the equal or rotating custody schedule, the court failed to make adequate findings as to earning ability of each parent and failed to determine a guideline amount before ultimately exercising its discretion to deviate from the guideline support. We remand for such determinations.

Exclusive Possession of Marital Home
The former husband argues that the trial court erred in awarding exclusive use and possession of the marital home to the former wife because the award was not connected to an obligation for support, and further erred in failing to terminate exclusive use and possession in the event the former wife remarries. The former husband relies on Duncan v. Duncan, 379 So.2d 949 (Fla.1980) for the proposition that an award of exclusive possession of a marital home must either be directly connected to the obligation to pay support (child or spousal) or be temporarily necessary to prevent reduction in the value of the subject property. See also McDonald v. McDonald, 368 So.2d 1283 (Fla.1979).
The former wife counters that Duncan itself recognizes that an award of exclusive possession must be determined by the equity of the cause, albeit in the context of some aspect of support. 379 So.2d at 952.
An award of exclusive possession of the marital home must serve a "special purpose," such as providing a benefit for a minor child. Arze v. Sadough-Arze, 789 So.2d 1141 (Fla. 4th DCA 2001); Todd v. *182 Todd, 734 So.2d 537 (Fla. 1st DCA 1999); Sugrim v. Sugrim, 649 So.2d 936 (Fla. 5th DCA 1995). The former wife argues and the trial court referenced that an award of exclusive use and possession was warranted because the minor children had lived in the house for the past ten years and that the former wife should be allowed to retain exclusive possession until the youngest child reaches the age of 18. The former wife acknowledges that this case is unique in that the parties have a valuable marital home that is unencumbered by a mortgage, that each party is financially secure and that the parties have shared custody of the minor children. She points out that she is responsible for upkeep of the sizeable home during the period of her occupancy which will benefit the former husband upon ultimate sale of the home. She urges that the best interests of the minor children should control.
This Court stated in Sency v. Sency, 478 So.2d 432, 433 (Fla. 5th DCA 1985), that "[e]xclusive possession given an ex-spouse and children of a marriage always constitutes an aspect of child support in kind and sometimes also constitutes an aspect of alimony." See also Richardson v. Richardson, 722 So.2d 280 (Fla. 5th DCA 1998); Arze. The actual effect of the trial court's award of exclusive possession in this case is to impose a significant support obligation upon the former husband whom it appears earns substantially less than the former wife.
Additionally, no "special purpose" has been established. The former wife's claim that allowing the children to remain in the marital home unrelated to any aspect of support is a sufficient "special purpose" would conceivably justify an award of exclusive possession to every parent who is granted some award of child custody. This would emasculate the policy underlying the award of exclusive possession which essentially relates to the obligation of support. The trial court's award of exclusive possession to the former wife who only has the children half the time and who did not request child support, was an abuse of discretion.

A.G. Edwards Account
The A.G. Edwards account was created by the former husband with his own pre-marital funds. The uncontroverted testimony was that the former wife never accessed the account, never withdrew money from the account, nor exercised any control over the account. According to the former husband's unchallenged testimony, the former wife's name was added to the account as a courtesy.
The former wife nevertheless contends that the account was properly found by the trial court to be marital property based on the joint titling of the account and the trial court's finding that the evidence was not clear as to how the parties actually managed the account, "or who made withdrawals or even if withdrawals were made." The trial court further observed that:
Public policy should strongly favor the permanency of interspousal transfers of person property into joint owner-ship. It seems inappropriate to permit a spouse to establish unconditional sharing of an account in good times and then to permit the spouse to take it back when storm clouds appear.
Contrary to the trial court's public policy pronouncement, this Court, in Archer v. Archer, 712 So.2d 1198, 1200 (Fla. 5th DCA 1998), explained that the creation and maintenance of a joint tenancy in personal property is not itself enough to establish the presumption that a gift was thereby intended. This Court noted that while section 61.075(5)(a)5, Florida Statutes (1997) presumes a gift is established when a tenancy by the entireties is created *183 by a spouse with his or her separate real property, the statute creates no such presumption insofar as personal property is concerned. The legislative silence in this regard suggests that any public policy relative to creation of gifts by a spouse retitling property as entireties properly extends only to real property.
The former wife points out that the disparate treatment between real and personal property was more recently addressed in Beal Bank, SSB v. Almand and Associates, 780 So.2d 45 (Fla.2001). That case did not involve application of section 61.075(5)(a)5, but rather concerned the right of a creditor to garnish bank accounts jointly held by husband and wife. The supreme court noted that Florida jurisprudence has treated jointly held personal property in a different fashion than jointly held real property. 780 So.2d at 54. The court noted that "policy considerations favor allowing the presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property." 780 So.2d at 58. The court explained:
We agree that the legitimate expectations of the parties regarding an account jointly held by them as a married couple should be no different than a home jointly owned by them as a married couple. The time has come for us to recognize that more confusion and less predictability in the law exists because of our Court's failure to recognize a presumption in favor of a tenancy by the entireties arising from joint ownership of bank accounts by husband and wife. Because this issue involves one arising from this State's common law and because the refusal to extend a presumption to personal property was a product of this Court's jurisprudence, we conclude that it is appropriate for us to recede from our prior case law.
Id.
The former wife argues that the policy concerns expressed in Beal Bank apply equally here.
Archer involved a Merrill Lynch Cash Management Account (CMA) which the wife inherited during the marriage. She thereafter transferred title to the CMA to herself and her husband as joint tenants. Sometime thereafter, the parties began using the cash assets in the CMA as a checking account to purchase food, gas, etc. However, with respect to securities and stock contained within the account, these remained intact and untouched. The trial court found that by retitling the CMA a presumption of a gift arose which had not been rebutted. This court affirmed the finding that a presumption arose as to the cash assets in the CMA which became commingled with marital funds but reversed as to the specific stock and securities which never became commingled and untraceable and the burden was on the husband to show that as to those assets the wife intended to make a gift to him of one-half of them. This Court remanded the case to the trial court for reconsideration of the issue of whether a gift of the stock and securities occurred, "without the benefit of any gift presumption." 712 So.2d at 1200.
While the factual underpinnings of Beal Bank and Archer provide an easy basis for distinguishing the two decisions, the philosophical bases underlying the two cases are not easily harmonized. Beal Bank indicates that the common law governing title to jointly owned property by married persons should be the same insofar as creditors rights are concerned, irrespective of whether the property is real or personal in nature. Archer, which involved section 61.075 governing dissolution of marriage *184 actions, recognizes a distinction. This case is governed by section 61.075 and Archer and it is for the legislature to change the law in this area if it so desires.
The application of Archer to this case is determinative. The undisputed evidence was that the former wife's name was added to the account as a convenience and she never accessed the account. No presumption of a gift in the account arose and the burden was on the former wife to adduce evidence that a gift was intended. She did not. Under the circumstances, the trial court's finding that the evidence was not clear as to management of the account mandates a ruling in favor of the former husband. The trial court should have denied the former wife any interest in the A.G. Edwards account.[2]

Orthodontia Expenses
At trial, the former wife testified she paid for their son's orthodontia work, with no contribution from the former husband. No contrary evidence appears to have been presented and the court ordered the former husband to reimburse the former wife for one-half of the costs of said dental work. In his motion for new trial/rehearing, however, the former husband presented a bill from the orthodontist indicating that he had, in fact, paid the orthodontist $3,260.30. The trial court declined to grant rehearing on this issue. Because we are remanding the cause for further consideration, the trial court should reconsider this one additional issue given the documentary evidence presented. See Hernandez v. Cacciamani Dev. Co., 698 So.2d 927 (Fla. 3d DCA 1997); National Enterprises, Inc. v. Martin, 679 So.2d 331 (Fla. 4th DCA 1996).
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
SHARP, W., and PALMER, JJ., concur.
NOTES
[1] The parties agree that the trial court mistakenly found in the final judgment that the former wife owned this home at the time of the marriage and thereafter created an estate by the entireties.
[2] Given this disposition, the trial court did not err in denying the former husband any interest in the former wife's Sun Trust accounts.