PARSONS, W., Associate Judge.
 

 This case involves an appeal and cross-appeal from a Final Judgment of Dissolution. We affirm the trial court’s decision as to all matters except two. We reverse the trial court’s decision as to the disposition of the Foley and Lardner pension contract and farm expenses.
 

 At the time of trial, the Husband was 77 years old and the Wife was 65. They married on April 29, 1972, and separated on January 7, 2007. The Wife filed for dissolution on April 9, 2007, and the Husband filed a counter-petition for dissolution. The Husband suffers from heart disease and prior to May of 2007, had undergone quadruple coronary bypass surgery. The Wife appeared to be in good health.
 

 
 *284
 
 FOLEY AND LARDNER PENSION ACCOUNT
 

 The Husband, an attorney, was admitted to The Florida Bar in November of 1959, and continued practicing law until his retirement in 1995. In 1964, he formed the law firm of Van Den Berg, Gay and Burke which was later known as Van Den Berg, Gay, Burke, Wilson and Arbin. At the time the parties married he had been practicing law for 12 1/2 years. His firm merged with the national firm of Foley and Lardner on March 1, 1985, where he worked until his retirement. At the time of the merger the Husband was given full credit for his years of service with the new firm without that firm requiring any contribution of money or a buy-in.
 

 At trial, the Husband asserted a partial non-marital interest in the Foley and Lardner pension contract as well as a non-marital interest in the NBC IRA account which was apparently funded from accumulations that occurred at his law firm. The trial court found that both the NBC IRA and the Foley and Lardner pension contract obligation were marital assets. The Husband, on appeal, concedes that the trial court was correct as to the NBC IRA but challenges both the finding that the Foley and Lardner pension contract was entirely marital and that it was an appropriate subject for the immediate offset method in determining the Wife’s present value in light of the plan’s characteristics.
 

 The Foley and Lardner pension contract arose as a result of the 1985 partnership agreement. The plan involved the firm’s contractual obligation to provide a defined benefit to its retirees which was initially unfunded. The partnership agreement was changed in 1992 to create a defined contribution segment as well as the already existing but unfunded defined benefit portion.
 

 The defined contribution segment only partially funded the firm’s pension contract obligation with employee contributions but did not change or add value to the Foley and Lardner pension contract. The Husband’s contribution to the defined contribution segment between 1992 and 1995, when he retired, was only $12,000.
 

 The defined benefit pension contract provided money benefits to the retiree based on years of service and a salary calculation during his remaining life. In other words, receipt of the plan benefits was contingent on his longevity. This plan, unlike many, had a provision that the monthly benefit would decrease by forty percent when the retiree reached the age of 80. In addition, payment was contingent on the survival of Foley and Lardner as an entity and was also conditioned to the extent that the Foley and Lardner pension contract was limited to a payment to its retirees of no more than ten percent of its net profit in any given year.
 

 The Husband was credited with 31 years and 11 months of service which equals 383 months with Foley and Lardner. He was married for 23 years and 7 months during that time, or a total of 283 months. The Husband’s expert, Gary David Kane, therefore calculated the marital portion of the Foley and Lardner contract obligation at 73.8% and applied that percentage to the expected pension payout over the Husband’s life adjusting for the scheduled reduction at the age of 80. The Wife’s expert, Leslie W. Eiserman, did a parallel analysis where he arrived at a “blended rate” of 80.73%, but only if the court found a non-marital component.
 

 The Final Judgment, dealing with the Foley and Lardner pension contract, indicated that “the court was not persuaded by his proof as to the value of the non-marital share and in light of the comingling of withdrawals deems all of it marital.” As a
 
 *285
 
 result the trial court found that the Foley and Lardner pension contract was a 100% marital asset subject to equal distribution.
 

 Section 61.075(5)(b)l., Florida Statutes (2007), defines a non-marital asset as one acquired by either party prior to the marriage. The facts fully show that the Husband received a defined benefits credit for 100 months of service before his marriage. Therefore, some portion of the retirement asset was a result of non-marital labor which makes that portion a non-marital asset as a matter of law.
 
 Bain v. Bain,
 
 553 So.2d 1889 (Fla. 5th DCA 1990);
 
 Zaborowski v. Zaborowski,
 
 547 So.2d 1296 (Fla. 5th DCA 1989).
 

 Non-marital assets lose their character if the asset itself becomes comingled and untraceable.
 
 Archer v. Archer,
 
 712 So.2d 1198 (Fla. 5th DCA 1998);
 
 see also Belmont v. Belmont,
 
 761 So.2d 406 (Fla. 2d DCA 2000). That occurred in this case only as each payment was received and to the extent that those funds were used by the parties jointly. There is no legal authority for the proposition that the use of the payments as received would change the nature of the entire asset.
 
 See Lakin v. Lakin,
 
 901 So.2d 186 (Fla. 4th DCA 2005).
 

 The use of a “coverture fraction” for purposes of determining the marital portion of a retirement or deferred compensation plan was approved in
 
 Trant v. Trant,
 
 545 So.2d 428 (Fla. 2d DCA),
 
 review denied,
 
 551 So.2d 464 (Fla.1989). In this case, there is competing evidence as to the appropriate coverture share which will need to be addressed below.
 

 In addition, the trial court, having found the Foley and Lardner pension contract to be entirely marital, employed the immediate offset method and converted the Wife’s half interest into a lump sum distribution based on a discounted present value applying an assumed life expectancy which recognized a reduction in benefits occurring at age 80. This approach is considered the preferred approach.
 
 Diffenderfer v. Diffenderfer,
 
 491 So.2d 265 (Fla.1986). At the same time, a lump sum distribution may not be the best way to ensure equitable distribution in every case.
 
 Boyett v. Boyett,
 
 708 So.2d 451 (Fla.1997).
 

 This court has expressly held that if determining the present value of a pension is too speculative, a trial court should make an award of a portion of the future payments when and if received.
 
 Brock v. Brock,
 
 690 So.2d 737 (Fla. 5th DCA 1997);
 
 see also Swanson v. Swanson,
 
 869 So.2d 735 (Fla. 4th DCA 2004). It is clear, however, that the trial court has a great deal of discretion in making such awards.
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197 (Fla.1980). The proper determination, given these facts, will lie within the sound discretion of the trial court on remand.
 

 FARM EXPENSES
 

 The parties bought the marital home which was a horse farm in 1999. Monthly maintenance was alleged to be approximately $10,057. At trial, the Wife indicated that she would be responsible for one-half of the “real expenses” on the farm until it was sold. The Wife’s attorney also announced- that the parties had agreed that: (1) the Husband would stay in the home; (2) the Wife would have access to the home to keep it in saleable condition; (3)the parties would split expenses; (4) any expense over $300 would require the written permission of the other party; and (5) the responsibility would continue even after death of one of the parties. Both parties further agreed to arbitrate any dispute as to expenses over $300.
 

 The parties concede that the Final Judgment has conflicting provisions as to the
 
 *286
 
 marital residence or farm expenses.
 
 [1]
 
 It should be noted that this appeal is surrounded by a great deal of commotion concerning language submitted in the Wife’s proposed final judgment which found its way into several paragraphs of the Final Judgment after it became common knowledge that the Husband planned to remarry. Without going into the details, suffice it to say that the parties had a clear agreement which was made in and accepted in open court. The parties’ agreement as stated should be honored. There should be no constraint on who lives with the husband in the marital home and he should not be required to pay a “fee” for any such occupancy.
 

 Accordingly, we approve the dissolution and holdings of the trial court with the exception of the court’s findings in regard to the Foley and Lardner pension contract and farm expenses. We remand to allow the trial court to reconsider these matters keeping the entire equitable distribution scheme in mind.
 
 See Ray v. Ray,
 
 624 So.2d 1146, 1148 (Fla. 1st DCA 1993).
 

 AFFIRMED in part; REVERSED part; and REMANDED for further proceedings.
 

 GRIFFIN and SAWAYA, JJ„ concur.
 

 [1]
 

 . The record demonstrates that the expenses for the marital residence or farm which the parties agreed to divide included mortgage (principal and interest), taxes, insurance, major repairs and utilities required for upkeep of the grounds not utilized as a result of occupancy of the residence.