[Cite as *Roberts v. Opalich*, 2023-Ohio-4652.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KILLEEN A. ROBERTS,                    :

    Plaintiff-Appellee,          :

                     No. 112612

    v.                                    :

MITCHELL D. OPALICH,                   :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 21, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-20-380802

---

### *Appearances:*

Lanter Legal, LLC, and Joseph J. Lanter, *for appellee.*

Edward L. Joseph and Randy J. Hart, *for appellant.*


KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Mitchell D. Opalich ("Husband"), appeals from the trial court's judgment granting a divorce to Husband and plaintiff-appellee, Killeen Roberts ("Wife"), and dividing their property. Finding no merit to the appeal, we affirm.

## I. Background

{¶ 2} In March 2020, Wife filed a complaint for divorce. Husband filed an answer and counterclaim, in which he averred that "[Husband] and [Wife] were married to each other on or about January 13, 2013, in Florida and no children were born as issue of the marriage." More than ten months later, Husband filed an amended answer to the complaint in which he questioned the validity of the marriage.

{¶ 3} On the first day of trial before a magistrate, the parties stipulated to the following facts:

> On December 7, 2012, Husband and Wife, both Cuyahoga County residents, obtained a marriage license from the Cuyahoga County Common Pleas Court, Probate Division.
>
> On January 6, 2013, while on a business trip in Aventura, Florida, Husband and Wife participated in a marriage/wedding ceremony officiated by a minister.
>
> Following the wedding, the minister filed the certificate of marriage with the Cuyahoga County Common Pleas Court, Probate Division.
>
> Husband and Wife never applied for or obtained a Florida marriage license.
>
> After January 16, 2013, Husband and Wife did not participate in another wedding.
>
> For the years 2013 through 2019, the parties filed federal tax returns as "married, filing jointly."
>
> Following the wedding until the present, Husband listed Wife as his "Spouse" and the primary beneficiary on his life insurance policy, and listed Wife as his "Spouse" on the company-provided healthcare insurance.
>
> The parties separated on May 1, 2020.

Husband purchased the real estate located at 4979 Countryside Road, Lyndhurst, Ohio, in 2009, and it had a current value of $485,000.

Husband purchased the real estate located at 1383 Slate Court, Cleveland Heights, Ohio, in 2007, and it had a current value of $280,000.

Husband purchased the real property located at 25901 Tungsten Road, Euclid, Ohio, in 1994. The property is owned by SAM Corp., which is owned by Husband, and had a current value of $650,000.

{¶ 4} The evidence at trial demonstrated that the above-referenced parcels of property are encumbered by mortgages, and that during the marriage, the Countryside Road mortgage was reduced by $82,320.68, and the Tungsten Road mortgage was reduced by $182,364.84.

{¶ 5} The magistrate's decision and recommendation issued after trial found that the parties' marriage was voidable, not void, and, therefore, the trial court had jurisdiction to resolve all issues relating to the complaint for divorce. The trial court subsequently overruled Husband's objections to the magistrate's decision and ordered Wife's counsel to prepare the judgment entry adopting the magistrate's decision.

{¶ 6} The trial court issued a judgment entry granting the parties a divorce, ordering that Husband be granted his separate property consisting of SAM Corp., and the Tungsten Road, Countryside Road, and Slate Court properties, and awarding Wife $132,000 in property division, payable by Husband in $5,000 monthly installments until fully paid. The court ordered that Husband was responsible for all debt incurred by the parties until July 1, 2020, when the temporary support order took effect. The court awarded Wife her 401(k) account

that had a balance of $1,200, and further awarded Wife $54,670.50 from Husband's 401(k). The court awarded each party the vehicle he or she was driving at the time of trial and ordered that the parties were to divide by lot the items listed on Wife's personal property list. Husband now appeals.

## II. Law and Analysis

### A. Validity of the Marriage

{¶ 7} In his first assignment of error, Husband argues that the parties' marriage was void, rather than voidable, and, therefore, the trial court had no jurisdiction to consider Wife's complaint for divorce.

{¶ 8} A voidable marriage is valid when entered and remains valid until either party secures a court order dissolving the marriage. *Darling v. Darling*, 44 Ohio App.2d 5, 7, 335 N.E.2d 708 (8th Dist.1975). A void marriage is invalid from its inception, and the parties may simply separate without a court order of divorce or annulment. *Id.*

{¶ 9} "A court lacks subject-matter jurisdiction over a divorce proceeding if the marriage between the parties was invalid." *Tatsing v. MJume-Tatsing*, 10th Dist. Franklin No. 16AP-827, 2017-Ohio-8460, ¶ 8, citing *Hussain v. Hussain*, 12th Dist. Butler No. CA2015-07-127, 2016-Ohio-3214, ¶ 12. "Generally, the validity of a marriage is determined by the *lex loci contractus*; if the marriage is valid where solemnized, it is valid elsewhere; if it is invalid there, it is invalid everywhere." *Mazzolini v. Mazzolini*, 168 Ohio St. 357, 155 N.E.2d 206 (1958), paragraph one of the syllabus; *see also Verma v. Verma*, 179 Ohio App.3d 637, 2008-Ohio-6244, 903

N.E.2d 343, ¶ 14 (2d Dist.). "In other words, the validity or existence of a marriage should be determined under the law of the place where the alleged marriage was contracted." *Tatsing* at ¶ 17.

{¶ 10} Under Fla. Stat. 741.08, a marriage in Florida is not to be solemnized without a license:

> Before any of the persons named in § 741.07 shall solemnize any marriage, he or she shall require of the parties a marriage license issued according to the requirements of § 741.01, and within 10 days after solemnizing the marriage he or she shall make a certificate thereof on the marriage license, and shall transmit the same to the office of the county court judge or clerk of the circuit court from which it issued.

Florida marriage licenses are to be issued by a county court judge or clerk of the circuit court. Fla. Stat. 741.01

{¶ 11} Husband contends that based on the law of Florida, where the wedding ceremony took place, he and Wife were never married because no Florida county court judge or clerk of a circuit court issued a marriage license to them, and no person may solemnize a marriage in Florida without a license having been issued. Accordingly, he asserts that "on its face there is no valid marriage in the state of Florida." (Appellant brief, p. 5).

{¶ 12} Husband's argument is without merit. "[T]he law of Florida now provides for only one kind of marriage, one which is entered into by the parties in good faith and in substantial compliance with chapter 741." *In re Estate of Litzky*, 296 So.2d 638, 639 (Fla.1974). Florida courts have applied the "good faith and substantial compliance" test and determined that where the particular facts and

circumstances demonstrate the good faith of the parties and substantial compliance with the statute, the marriage is valid, even where it is solemnized without a license.

{¶ 13} For example, in *Metro. Dade Cty. v. Shelton*, 375 So.2d 32, (Fla.1979), the court found a valid marriage, even though the parties were married without a marriage license, where they attempted to obtain a license for their Friday evening marriage and were advised by the court clerk that the marriage could proceed, even though the license would not be issued until the following Monday. The court found "no question as to the good faith of the parties" because "both of them intended to enter into a valid marriage." *Id*. at 33. The court further found substantial compliance with the law because the same notary who married the couple signed the marriage certificate, even though the notary signed the certificate of marriage as having occurred on July 11, despite the ceremony occurring on July 8. *Id*. Accordingly, the court found the marriage was valid.

{¶ 14} Conversely, in *Hall v. Maal*, 32 So.3d 682 (Fla.2010), the court found a marriage invalid where the couple was aware they needed a marriage license to be married in Florida but did not obtain one. The court defined "good faith" as "an honest belief * * * [an] honesty of intention, and freedom from knowledge of circumstances which ought to put the holder on inquiry." *Id*. at 686. The court noted that a year after they were married, the couple applied for a marriage license, which the court found demonstrated that the couple was well aware that the original wedding ceremony did not produce a legally, cognizable marriage under Florida law. *Id*. With respect to substantial compliance, the court stated that "in order for there

to be substantial compliance, there has to be some compliance. Some compliance would, at a minimum, entail the parties applying for and receiving a license." *Id.*

{¶ 15} We find that under the particular circumstances of this case, Husband and Wife acted in good faith and substantial compliance with Florida law such that their marriage was voidable, rather than void. The record reflects that the parties obtained a marriage license from the Cuyahoga County Probate Court on December 7, 2012. Thereafter, the parties decided to marry in Florida, and apparently having an "honest belief" that their Ohio marriage license was sufficient, made arrangements to have their license and certificate sent to them via overnight mail. The parties then participated in a wedding ceremony in Aventura, Florida on January 16, 2013, officiated by a minister who returned the certificate of marriage to the Cuyahoga County Probate Court within 30 days of the ceremony. These actions are indicative of the parties' "attempting in good faith to go through the steps that would result in a legally cognizable wedding." *Hall* at 686.

{¶ 16} Husband contends that rather than substantial compliance with Florida law, there was "zero compliance" because the parties did not obtain a Florida marriage license before they were married. (Appellant brief, p. 6). We disagree and find the parties' actions in having their marriage license overnighted to them in Florida, as well as their officiant's return of the certificate to the court, demonstrates good faith and substantial compliance. Furthermore, even assuming the Ohio license was invalid under Florida law, "an invalid marriage license does not of itself

invalidate the marriage in the absence of a statutory declaration of invalidity," of which Husband cites none. *Shelton*, 375 So.2d 32, at 33.

{¶ 17} Husband's citation to *Preure v. Benhadj-Djillali*, 15 So.3d 877 (Fla.2009), as support for his contention that the marriage was invalid because the parties never obtained a Florida marriage license is not on point. In *Preure*, the parties participated in a religious ceremony in Oregon but never applied for a marriage license, even though the wife admitted that Oregon law required a marriage license for a valid marriage to occur. *Id*. at 878. The Florida court found that the marriage was not valid because neither party sought nor obtained an Oregon marriage license and, further, that Oregon decisional law indicated that a lawful marriage presumes that the parties "at least undertook efforts to satisfy the state's requirements for a valid marriage, one of which is to obtain a marriage license." *Id*.

{¶ 18} This case is not like *Preure*. Here, the record reflects that Husband and Wife undertook efforts to satisfy the requirements for a valid marriage; they obtained a marriage license, albeit from Ohio, and apparently believing that license sufficient to satisfy the requirements for a legally cognizable wedding in Florida, had it overnighted to them in Florida before their wedding. Moreover, after the marriage, until the time of trial, they filed joint tax returns and procured life insurance and healthcare benefits for Wife as Husband's "spouse." Clearly, Husband and Wife had a good faith belief that they had satisfied the requirements for a valid marriage in Florida.

{¶ 19} "Due to the harshness of declaring a marriage void, few circumstances have been identified as requiring such a result." *Smith v. Smith*, 224 So.3d 740, 746 (Fla.2017). On these particular facts and circumstances, where Husband and Wife acted in good faith and substantial compliance with the law, we find that the trial court did not err in finding that Husband and Wife's marriage was voidable rather than void, and that it therefore had jurisdiction to render a decision on Wife's complaint for divorce. The first assignment of error is overruled.

## B. Mortgage Deduction

{¶ 20} In his second assignment of error, Husband contends that the trial court erred in including the mortgage reduction on the Tungsten Road property in its property division analysis. Husband contends that the Tungsten Road property is a premarital asset because it was awarded to him in his previous divorce. He asserts that his only involvement with the property during the marriage was to collect the rent from the tenant; pay the mortgage, taxes and insurance; and if a repair was needed, hire a contractor, all of which he asserts took less than one hour per month of his time. Thus, he contends the trial court should not have considered the Tungsten Road property in its division of marital property because it was a premarital asset and his involvement with it should have been considered "passive."

{¶ 21} Upon granting a divorce, the trial court is required to divide and distribute the marital estate between the parties in an equitable manner. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989). In doing so, the trial court is necessarily vested with wide discretion in formulating an equitable

distribution of such property. *Id.*; *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). As a result, the trial court's division of marital property will not be disturbed on appeal unless the trial court abused its discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). The Ohio Supreme Court has defined "'abuse of discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.2d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "Abuse of discretion" has also been described as including a ruling that lacks a sound reasoning process. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

{¶ 22} Under R.C. 3105.171(A)(3)(a)(iii), marital property includes all income and appreciation on separate property due to the labor, monetary, or in-kind contribution of either party that occurred during the marriage. Passive income and appreciation acquired from separate property by one spouse during the marriage is separate property. R.C. 3105.171(A)(6)(a)(iii). "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

{¶ 23} We find no abuse of discretion in the trial court's consideration of the mortgage reduction on the Tungsten Road property in its division of marital assets. Husband's "labors" regarding the property, even if not involving a significant amount of time, were not passive. It is apparent from Husband's own testimony

that he performed duties with respect to the property that paid down the mortgage and helped it to be maintained. Accordingly, the trial court did not abuse its discretion in determining that the reduction in the mortgage on the property was marital, rather than separate, property. The second assignment of error is overruled.

### C. Judgment Entry

{¶ 24} After the trial court overruled Husband's objections to the magistrate's decision, it ordered Wife to prepare a proposed judgment entry of divorce, which she did. In his third assignment of error, Husband contends that the trial court erred when it adopted Wife's proposed judgment entry because it did not mirror the language used in the magistrate's recommended decision.

{¶ 25} Specifically, Husband objects that the judgment entry included language that Husband should prepare the Qualified Domestic Relations Order ("QDRO") within 30 days of journalization of the divorce decree, even though such language was not included in the magistrate's decision. He also objects that Wife's proposed entry included language that the issue of temporary support would remain pending and not merge into the divorce decree and that except for Wife's motion to show cause and motion for attorney fees, all other pending motions were denied as moot, even though such language was not in the magistrate's decision.

{¶ 26} Husband contends that the trial court erred in adopting this language in its judgment entry because "when counsel on a case is requested to prepare the judgment entry, all that counsel can do is follow the terms in the magistrate's

decision and under no circumstances is counsel permitted to add [to] or modify the language." (Appellant's brief, p. 17). Husband cites no legal authority for this argument, however.

{¶ 27} Moreover, both parties were given an opportunity to weigh in on the final language of the decree and both filed materials with the court to that end. Husband has the burden of showing that the trial court abused its discretion in adopting Wife's proposed judgment entry, which he cannot do. It is nonsensical to suggest that because the magistrate did not include any language about the preparation of a QDRO to distribute retirement assets that the trial court must leave the final judgment entry silent as to the manner in which such assets are to be distributed. Furthermore, the magistrate's written decision was a recommendation to the trial judge; the trial court may adopt or reject a magistrate's decision in whole or in part, and with or without modification. Civ.R. 53(D)(4)(b). Thus, even if Wife's proposed judgment entry contained language not included in the magistrate's recommended decision, the trial court acted within its discretion to adopt Wife's proposed final judgment entry, despite the fact that it did not quote the magistrate's decision verbatim. The third assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
MICHAEL JOHN RYAN, J., CONCUR